**UNITED STATES, Appellee,**

v.

**Private (E–2) Curtis D. CROWLEY, SSN 425–02–2928, United States Army, Appellant.**

**SPCM 12550.**

U. S. Army Court of Military Review.

20 July 1977.

---

Captain Larry C. Schafer, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain Demmon F. Canner, JAGC, and Captain Buren R. Shields, III, JAGC.

Captain Glen D. Lause, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, and Major Steven M. Werner, JAGC.

Before the Court sitting *EN BANC.*

## OPINION OF THE COURT

MOUNTS, Judge:

The issue to be decided in this case is whether the appellant's plea of guilty was provident when analyzed under the guidelines established by the United States Court of Military Appeals in *United States v. Green.*[1]

In the *Green* case, the Court stated: "We will view a failure to conduct a plea bargain inquiry as a matter affecting the providence of the accused's plea . . ."[2]

We find that the military judge did conduct a plea bargain inquiry in our case. The inquiry, however, did not contain all of the specific areas of inquiry set out in *Green.* In *Green* the Court held:

"We, therefore, hold that as part of the *Care* inquiries . . . ., the trial judge shall ascertain whether a plea bargain exists and, if so, shall conduct an inquiry into the pretrial agreement in accordance with the *Elmore* guidelines previously enunciated. Inquiry into the actual sentence limitations specified in the plea bargain should be delayed until after announcing sentence where the accused elects to be sentenced by the military judge rather than a court with members. . . ."[3]

The *Elmore*[4] guidelines are also stated in the *Green* decision and provide the following rules:

"[T]he trial judge must shoulder the primary responsibility for assuring on the record that an accused understands the meaning and effect of *each* condition as well as the sentence limitations imposed by any existing pretrial agreement. . .

In addition to his inquiry with the accused, the trial judge should secure from counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties and that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain. . . ."

The United States Court of Military Appeals gave as its policy considerations in the *Green* case for requiring a plea bargain inquiry the following reasons:

"Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understanding between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made. . . . Finally we believe trial judges must share the responsibility, which until now has been borne by the appellate tribunals, to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness."[5]

---

1. 1 M.J. 453 (1976).

2. *Id.* 1 M.J. at 456.

3. *Id.* 1 M.J. at 456.

4. *United States v. Elmore*, 1 M.J. 262 (1976).

5. *Supra* 1 M.J. at 456.

The military judge in our case did conduct a plea bargain inquiry and also fully satisfied the requirements then established in 1969 by the *Care* decision.[6] The plea bargain inquiry portion of the trial included in part the following dialogue:

"MJ: All right. Is there any pretrial agreement?

TC: There is, Your Honor. Let the record reflect that I am handing to the military judge what has been marked as Appellate Exhibit II, the Pretrial Agreement.

MJ: All right. I take it there is an appendix that goes along with Appellate Exhibit II?

TC: There is, and it has been marked as Appellate Exhibit III, pertaining to sentencing.

MJ: Would you give that to the reporter, please?

TC: Let the record reflect that I am handling Appellate Exhibit III, the sentencing portion of the Pretrial Agreement, to the court reporter.

MJ: Private, I am looking at what has been marked as Appellate Exhibit II, styled Pretrial Agreement, dated 5 October 1976. Did you sign the back page of Appellate Exhibit II?

ACC: Yes, Your Honor.

MJ: And did you read it over and discuss it with your defense counsel before you signed it?

ACC: I did, Your Honor.

MJ: And do you understand all of it?

ACC: Yes, Your Honor.

MJ: Now it says here that, 'In offering the above agreement, I should like to state that I am satisfied with the defense counsel who has been appointed to defend me;' is that correct?

ACC: Yes, Your Honor.

MJ: You are satisfied in all respects with Captain Desonier?

ACC: Yes, I am.

MJ: Do you feel that he is doing his best job by pleading you guilty of larceny?

ACC: Yes, Your Honor.

MJ: It goes on to say, 'This offer to plead guilty originated with me and no person or persons have made any attempt to force or coerce me into making this offer or to plead guilty;' is that correct?

ACC: Yes, sir.

MJ: And you understand all of that?

ACC: Yes, Your Honor.

MJ: And it says, 'My defense counsel has advised me of the meaning and effect of my guilty plea, and I understand the meaning and effect thereof;' is that right?

ACC: Yes, Your Honor.

MJ: It goes on to say, 'I understand that I may withdraw the plea of guilty at any time before findings are announced for any reason, and at any time before sentence is adjudged with permission of the military judge for good cause;' do you understand that?

ACC: Yes, Your Honor?

MJ: Now, is there a stipulation of fact in this case?

TC: There is not, Your Honor.

MJ: All right. It goes on to say that, 'I further understand that this agreement will be automatically cancelled upon the happening of any of the following events: The withdrawal by either party from the agreement prior to trial;' do you understand that?

ACC: Yes, Your Honor.

MJ: 'The changing of my plea by anyone during trial from guilty to not guilty;' do you understand that?

ACC: Yes, Your Honor.

MJ: And lastly, 'The refusal of the court to accept my plea of guilty;' do you understand that?

ACC: Yes, Your Honor.

MJ: Now, is it your understanding, Private, that you have a certain sentence agreement with the Convening Authority?

ACC: Yes, Your Honor.

6. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

MJ: And do you understand what that certain sentencing agreement is that you have with the Convening Authority?

ACC: I do.

MJ: All right. Now, tell me, is there anything at all about your pretrial agreement that you have with the Convening Authority that you do not understand?

ACC: Captain Desonier went over with me and explained very clearly to me, Your Honor, and I think I understand it okay.

MJ: You understand everything?

ACC: Yes, Your Honor.

MJ: If you have any questions now is the time to ask?

ACC: I don't have any questions, Your Honor.

MJ: All right. Has there been any restraint in this case?

TC: No, Your Honor."

In addition, the military judge, sitting alone in our case, properly waited until after announcing the sentence to inquire into the actual sentence limitations specified in the plea bargain. The inquiry after the sentence was conducted as follows:

"TC: Let the record reflect that I am handing Appellate Exhibit III to the military judge.

MJ: Appellate Exhibit III, Private Crowley, reads: 'Provided the Convening Authority agrees to: number one, suspend any confinement adjudged which is in excess of two months confinement at hard labor; and, number two, suspend any forfeitures adjudged which are in excess of two-thirds pay per month for three months.'

Now, is that the entire agreement as to sentence?

TC: It is, Your Honor.

MJ: And was that sentence agreement the understanding that you had with the Convening Authority?

ACC: Yes, Your Honor.

MJ: Do you have any questions about it?

ACC: No, Your Honor.

MJ: The court is adjourned."

The appellant alleges that the above-stated inquiry failed in several areas to fully comply with the *Green* requirements. These alleged failures are as follows:

1. The military judge failed to explain the significance of not entering into a stipulation of fact after discovering that there was no stipulation. The military judge is also alleged to have failed to explain to appellant that the agreement was automatically cancelled upon appellant's failure to agree with trial counsel on the contents of the stipulation.

2. The military judge failed to insure on the record that the appellant understood the sentence limitations imposed by the pretrial agreement.

3. The military judge failed to ascertain from counsel that his understanding of the terms and conditions of the pretrial agreement comported with their understanding of the pretrial agreement.

4. The military judge did not secure from counsel for the accused as well as the prosecutor their assurances that the written agreement encompasses all of the understandings of the parties.

Taking these allegations in order, we decide as follows:

■ 1. The military judge had no purpose to serve in explaining the condition in the agreement to enter into a stipulation. Having discovered that there was no stipulation the condition became moot. Insistence upon a stipulation could have only enhanced the Government's position, since the Government had absolute control of its contents by its ability to cancel the plea agreement if there was disagreement on the contents of the stipulation.

■ 2. We hold that where the sentence limitations are simple and straight forward, as in this case, the judge's inquiry with the accused did insure on the record that the accused understood the sentence limitations. The military judge read the brief sentence limitations aloud to the accused. The military judge had previously obtained

assurances from the accused that the defense counsel had gone over the agreement with the accused and explained it to him. The military judge asked if that was the sentence limitation agreement he had with the convening authority and asked if the accused had any questions. The military judge received appropriate responses to both these questions. This inquiry should be sufficient to insure to a reasonably cautious military judge, dealing with an average soldier, that the soldier fully understood the two noncomplex limitations concerning the sentence.

■ 3. The military judge did fail to ascertain from counsel that his understanding of the terms and conditions of the pretrial agreement comported with their understanding of the pretrial agreement. The military judge did ascertain from trial counsel that the judge's understanding of the sentence was the entire agreement as to sentence. The military judge also inquired in a detailed and thorough manner with the accused as to each condition of the agreement and his understanding of these terms. Both the defense counsel and the trial counsel were present and listened to this detailed explanation which was placed on the record by the military judge. The judge's understanding was spread on the record in an unambiguous manner. Under these circumstances we do not find an error when the military judge fails to ask counsel if his understanding comports with their understanding. We find that under these circumstances we can safely infer that the judge's understanding comports with counsels', because they are under a duty to voice their disagreement on the record. The military judge did not hurry through the inquiry or attempt to brush any questions aside. Both counsel had a lengthy opportunity to correct the record if corrections were necessary. We do not suggest that this is the best procedure. We encourage

military judges to ask the specific question of both counsel, but the failure to ask this question should not cause an improvident plea *per se*.

■ 4. The appellant alleges, and we agree, that the military judge did not secure from the counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties. As previously noted the judge asked the trial counsel if that was the entire agreement as to sentence but this falls short of compliance with this condition. In addition, we do not find that by silence of counsel, we can infer that there were no additional agreements. The stated policy reason for this condition is to expose any secret understandings. If there were secret understandings it is difficult to infer that counsel would volunteer to reveal them at trial even though they would be under a duty to volunteer such information. Having the question answered by counsel, however, does insure a direct responsibility in this procedure which should have a prophylactic effect in the prevention of any secret agreements. Having found that the answer to this inquiry can not be inferred from the silence of counsel, we are left with the question of whether we must find the plea improvident. We find that this Court can remedy this defect. We have by order of this Court, dated 18 May 1977, secured affidavits from the trial counsel and trial defense counsel. These affidavits have been included with the record and reflect that neither counsel had any secret understandings and the written agreement contained all the provisions surrounding the agreement. We find this to be a particularly salutary use of our unique appellate fact-finding authority. Such fact-finding authority was given to this Court by Article 66(c) of the Uniform Code of Military Justice, 10 U.S.C. § 866(c).[7] By using this

7. We are aware of military case law which does not allow this Court to consider evidence outside the record of trial to support or reverse a conviction on the merits. *United States v. Lanford*, 6 U.S.C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955); *United States v. Bethea*, 22 U.S.C. M.A. 223, 46 C.M.R. 223 (1973). The issues before us are clearly distinguishable. Here, we are faced with a situation which requires a determination of whether a collateral procedural defect in the guilty plea inquiry may improvidence the appellant's plea. It does not *per se*

fact-finding power we are indeed sharing the responsibility to police the terms of pretrial agreements with the military judge, as noted in the *Green* decision. Having now found that there were no secret agreements in this case, we have assured ourselves that this plea of guilty was provident. We see no merit in the argument that we can not cure this defect at this level. It appears clear from the record that the military judge simply forgot to ask counsel this question. No underlying sinister motives for the omission can be detected. No underlying sinister motives for the omission can be detected. There is no doubt that counsel's answers to our affidavits would have been the same answers they would have given at the trial. Had they given such answers at the trial the military judge would have no reason to inquire further and indeed the guidelines in *Green* do not provide for a further inquiry. There is no method to absolutely test, even with the response being made directly to the military judge, whether the response of counsel is accurate. However, the prophylactic nature of the question being asked is still present whether the military judge asks the question or we ask the question by affidavit. Therefore, it would be a case of putting form over substance if we were to find that we could not cure a defect of this unique nature at the appellate level. It is also inappropriate to argue that once the defect exists there is no remedy short of a rehearing or dismissal. If we find through the use of a valid fact-finding procedure

that the plea was provident, how can the fundamental rights of the accused be injured? They can not. In fact his rights are more fully protected by this procedure in assuring a more efficient disposition of his case.

In addition, we do not disagree in principal with the judges of this Court who find that these kinds of facts must be established by a limited rehearing, where the accused, counsel and the military judge will all be present. A limited rehearing would also be another method to establish the fact that there were no secret agreements but it is much more costly and time consuming than the securing of affidavits from counsel.

▇ We are aware that the *Care* decision itself deals with basic substantive requirements, and specific compliance with its guidelines is mandated in order to insure the providency of a plea of guilty. These guidelines include a detailed explanation of the offense, explicit advice as to what is given up by the accused's waiver of a trial on the merits and other very basic items of information. All of these guidelines concern the basic substantive rights of the accused to insure a knowing, intelligent and conscious waiver. As previously noted, the *Green* decision makes its additional guidelines part of the *Care* inquiry. The *Green* case also states that a failure to conduct a plea bargain inquiry will be viewed as a matter affecting the providency of the plea. Therefore, if the specific guidelines of

change the substance of the appellant's admission of guilt or the validity thereof but rather concerns a collateral procedural plea bargain inquiry.

We are charged with the responsibility of expediting the appeal process, and in also improving techniques for the preparation of records for appeal which will conserve public funds and time expended in the criminal process.* Affidavits can supply the Court with necessary valid information as to whether any secret agreements were made. By using affidavits we expedite the time necessary for the processing of such matters and conserve public funds as rehearings are not required absent some showing of their necessity. These procedures are in full accord with the noted Standards. We note that the United States Su-

preme Court in the recent case of *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), in dealing with the providency of a guilty plea, has stated that district court judges, who have fact-finding powers similar to the powers that this Court was given by Congress in Article 66(c), can develop their own suitable procedures for discovery, concerning omissions in the providency inquiry. Therefore, we find a substantial basis for concluding that this Court may properly utilize affidavits as a means of avoiding the need for an evidentiary hearing.

* *See* paragraphs 3.3 and 3.4, Standards Relating to Criminal Appeals, American Bar Association Project on Standards for Criminal Justice, hereafter termed the Standards.

*Green* are not followed, must we hold the plea improvident? We find that substantial compliance with certain guidelines is sufficient. The specific guidelines of *Green* are intended to obtain the overall policy objectives of complete fairness, enhancing public confidence, assuring clarity and complete openness in the plea bargaining procedures. These are important but not of the same substantive nature and importance as the basic *Care* inquiry. They do not require the strict specific adherence to each guideline to obtain the policy objectives. Also, only the failure to conduct a plea bargain inquiry is noted as affecting providency. The *Green* case does not specifically state that failure to follow each specific guideline while conducting the plea bargain inquiry must result in an improvident plea.

In summary, we find the guilty plea in this case was provident. The *Green* decision does not require a perfect plea bargain inquiry. If the military judge has conducted an inquiry which is in substantial compliance with the *Green* guidelines, we hold that the plea can be considered provident. In order to have substantial compliance, we require a sufficiently high level of compliance so that we can assure ourselves from the record by direct responses or justifiable inferences that all the inquiries have been satisfactorily covered and answered. As noted, we do not feel that we can infer a proper response if the question concerning possible secret agreements is not asked. Such a defect requires further shared action on our part. We find that securing affidavits to answer this question is an appropriate use of our fact-finding power. The use of this procedure enhances the stature of this Court by enabling the Court to cut through unnecessary formalism and achieve a timely, less expensive result, which at the same time protects the rights of the accused. In this regard, if the affidavits would have indicated any possibility of a secret agreement, this Court would have taken immediate action to insure that the appellant's rights were fully protected.

The findings of guilty and the sentence are affirmed.

Chief Judge CLAUSEN, Senior Judges CARNE and JONES, and Judges MITCHELL, DeFORD and FELDER concur.

Judge FULTON not participating.

CLAUSE, Senior Judge, concurring in part:

I agree with the results and generally with the rationale of the majority opinion. My disagreement is with the necessity to obtain the affidavits in question in this case.

The additional requirements set forth in *United States v. Green*,[1] are in keeping with the present trend of civilian jurisdictions to make plea agreements a matter of record and to require inquiry into the understanding of the parties as to the terms of the agreement. The 1975 amendment to Rule 11 of the Federal Rules of Criminal Procedure sets forth the federal requirements. Numerous states have established similar requirements by statutes as well as by judicial decree. The reasons often given for requiring plea bargain disclosure include (1) eliminating errors generated by misunderstandings, (2) deterring undesirable bargains by subjecting them to public scrutiny, and (3) reducing appellate litigation.[2] The extent to which these goals are achieved often depends upon the expertise of the judge conducting the inquiry. Mr. Justice Powell noted in his concurring opinion in *Blackledge v. Allison*,[3] that "[i]f all participants in the process at the plea stage are mindful of the importance of adhering carefully to prescribed procedures and of preserving a full record thereof, the causes of justice and finality both will be served." But, as the majority opinion in *Allison* stat-

---

1. 1 M.J. 453 (1976).

2. *See* Bond, Plea Bargaining and Guilty Pleas, § 6.10[1]. This text contains an exhaustive review of the general area as well as citations to federal and state cases.

3. 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136, 1977.

ed, no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it uniformly invulnerable to subsequent challenge. It should be noted that these comments were made in reference to the more basic due process requirements. Perfection, while always desired, is not so easily obtained. It is for this reason that we now struggle to establish a remedy for those less than perfect *Green* inquiries.

The due process requirement that there be some procedure for ascertaining whether an accused pleaded voluntarily and intelligently is well established and failure of the record to so indicate results in almost certain reversal. The later requirements have not, however, been considered to be constitutionally mandated. The results of a failure to comply fully with these later requirements are varied. However, the courts are most consistent in that substantial rather than ritualistic compliance is all that is required. As might be expected the definition of what constitutes "full" or "substantial" varies significantly. Generally, courts look to the nature of the deficiency and weigh its impact on the case before them. There is little support for an automatic reversal other than where the basic due process requirements of voluntariness are not met. Thus, I concur fully with the conclusion of the majority that substantial compliance with the *Green* requirements is all that should be required. Such an approach in no way diminishes the commendable purpose of *Green*. The inquiry required by our military practice is now one of the most comprehensive in existence. It not only assures the establishment of voluntariness, but achieves all the goals of the extended inquiry. We need not fear an intentional defiance of the letter and spirit of *Green*. I expect the failures to be few, especially now that the desire for strict technical compliance should be clear.

As previously noted, my disagreement with the majority opinion is with the re-

quirement for affidavits as to the existence of any secret agreement. My objection is not so much to the use of affidavits in these limited circumstances, but rather to the need for affidavits or other fact-finding devices where there is no issue of harm to a party. Consequently, I would not order the production of further evidence unless the appellant alleges prejudice. There was no such allegation here and I would have affirmed this trial result as constituting substantial compliance with the procedural requirements of *Green*. I do not consider it an unreasonable burden to require an allegation of harm where there is a technical defect in the providency inquiry of less than fundamental dimensions. I find no statutory or due process requirement for a more stringent remedy for deficiencies of the type required by *Green*.

COSTELLO, Judge, dissenting and concurring in result:

In *United States v. Green,* 1 M.J. 453 (1976), the Court of Military Appeals required trial judges to inquire into certain aspects of those agreements between convening authorities and accused persons which contain any of the terms of a negotiated plea of guilty. The trial judge in this case neglected two of the required inquiries, the "openness" and "unanimity" provisions of *Green*, and we must decide the consequences of his neglect.[1] Appellant has not asserted that there was a hidden agreement which the openness inquiry would have disclosed; nor has he posited any difference of understanding about the terms of the agreement presented to the trial court which would have fractured unanimity. Nonetheless, appellant would have us order a full rehearing because of this failure to inquire into the terms and circumstances of the agreement, arguing that the same remedy is appropriate here as for failure to inquire into the voluntariness of the plea itself, as required by *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

---

1. There is evidence of record to support the conclusion that the other requirements of *Green* were met or mooted.

Such a disruptive remedy ought to be our last resort. Therefore, we inquire about ways to honor the mandate of our higher court with less impact on the system. This case deals with the screens and protections typically erected by courts and legislatures around constitutional rights, but not with any such right itself. Violations of basic rights do require basic remedies. Thus, where there are substantial constitutional rights at the bottom of a requirement such as the one to establish the voluntariness of a guilty plea, *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), a failure to establish means that the plea must be rejected and a rehearing ordered. *Care, supra.*[2] Similarly, if it appears that an accused has been denied either a constitutional or statutory right to appointed or individual counsel, a rehearing is required. *United States v. Gudobba*, 20 C.M.R. 864 (A.F.B.R.1955); *United States v. Mathis*, 6 C.M.R. 661 (A.F.B.R.1952).

Moving from the rules expressing the right itself to the rules protecting the right, a difference appears. Thus, the right to counsel was protected by the judicial rule in *United States v. Donohew*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969) wherein it was stated:

> "We believe the seriousness of the situation dictates that *the record should contain the accused's personal response* to direct questions incorporating each of the elements of Article 38(b) [10 U.S.C. § 838(b)], *as well as his understanding of his entitlement* thereunder." (Emphasis supplied.)

*Id.*, at 152. However, if a military judge neglected to make the record required by this rule reversal was not always found necessary. Where an omission from the judge's inquiry was discovered before the convening authority's action, proceedings in revision were appropriate to supply the needed record. Article 62(b), UCMJ, 10 U.S.C. § 862(b), *United States v. Barnes*, 21 U.S.C.M.A. 169, 44 C.M.R. 223 (1972). *See also United States v. Berkley*, 47 C.M.R. 30 (N.C.M.R.1973).[3]

Although the same theory has not been applied in those cases where the omission from the record is first raised at this level, there is no reason why it could not be used. We are dealing with simple trial error, of a quantum not *per se* amounting to any deprivation of due process. The rule for such cases is that: "Error in the course of a prosecution resulting in conviction calls for the correction of the error, not the release of the accused." *Pollard v. United States*, 352 U.S. 354, 362, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957), *citing Dowd v. Cook*, 340 U.S. 206, 210, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Article 59, UCMJ, 10 U.S.C. § 859; Rule 52(a), Fed.Rules Crim.Proc.

In Federal practice such deficiencies in the record are the occasion for remand and appropriate action below. Thus, in *Brown v. United States*, 314 F.2d 293 (9th Cir. 1963), the appellant complained of a court reporter's failure to record the closing arguments of counsel as then required by 28 U.S.C. § 753 and demanded a new trial. The Court of Appeals held that in the absence of an assertion that there was error in an unrecorded summation, reversal is precluded by Rule 52(a), Fed.Rules Crim.Proc., Harmless Error. The remedy to be provided in such cases is vacation and remand to hear evidence on the content of the summation and to decide whether prejudice resulted. *United States v. Selva*, 546 F.2d 1173, 1175, n. 3 (5th Cir. 1977); *Brown, supra.*

The evidentiary hearing has also been used to supplement the record in those guilty plea cases where appellant asserted that he undertook to withdraw his plea of guilty, though the *pro forma* record before the appellate court reflected the contrary. The hearing was granted upon an offer of

---

2. The "right" protected by the *Green* inquiry is a compound of the privilege against self-incrimination, the right to confront witnesses and the right to a jury trial.

3. *Berkley* approved proceedings in revision to supplement a *Care* inquiry. *Contra United States v. Kaetzel*, 48 C.M.R. 58 (A.F.C.M.R. 1973). Based on the Federal cases cited, *infra*, *Berkley* is better decided.

proof and appellant's assertion that witnesses were available. *Haacks v. Wainwright*, 387 F.2d 176 (5th Cir. 1968).

In all of these cases the initial effort was to bring the record for appellate review into conformity with requirements set for that review. The similarity between *Green* and *Donohew* in this regard permits viewing the requirements flowing from them as identical. *Green* requires that ". . . as part of all *Care* inquiries" certain questions shall be put to the accused in open court. *Green, supra,* at 1 M.J. at 456. *Care* was quite clear in its mandate that ". . . the record of trial . . . must reflect . . . ." the inquiries. *Care, supra,* 18 U.S.C.M.A. at 541, 40 C.M.R. 253. What is the "record" for purposes such as this? Our military practice is fragmented; we have three answers because of our powers over both findings and sentence, and because of our generous views on raising issues such as sanity and jurisdiction, not to mention the providence of guilty pleas, at all levels.

The variation in answers just referred to is a product of the various purposes for which the question is put. Where the issue on appeal involves the conduct of a trial judge with respect to a substantial right, the phrase "facts of record" is narrowly construed. Thus, where the issue was the propriety of a trial judge's remarks to a hung jury, the version of the trial record agreed upon by counsel was rejected by the Fifth Circuit which accepted only the version certified by the trial judge. *Kesley v. United States*, 47 F.2d 453 (5th Cir. 1931), *citing Clune v. United States*, 159 U.S. 590, 16 S.Ct. 125, 40 L.Ed. 269 (1895). *Clune* rejected a version of the trial judge's instructions which had been filed with the clerk as "among the papers in the case". The Court said that the trial record consists only in that which is ". . . authenticated by the signature of the judge." *Id.,* at 593, 16 S.Ct. at 126.

Similarly, where the issue involves conduct of the trial jury, a bare allegation that the jury separated before rendering its verdict is ineffectual, absent supporting evidence of record. *Pounds v. United States*, 171 U.S. 35, 18 S.Ct. 729, 43 L.Ed. 62 (1898); *Bacon v. A.B.A. Independent Oil & Gasoline Co.,* 111 Neb. 830, 198 N.W. 143 (1924).

Although the strictness of these early rules has been ameliorated somewhat,[4] the content of an appeal and its supporting papers is still rigorously controlled. Today, the record on appeal consists of the "original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries . . . ." Rule 10(a), Fed.Rules App.Proc.[5] The general rule which follows from this is that ". . . affidavits outside the record cannot be considered." *Scarborough v. Kellum, Sheriff,* 525 F.2d 931, n.4 (5th Cir. 1976). What, then, is outside the record? An affidavit filed in the district court after the record was closed by filing a notice of appeal is not part of the record on review. *United States v. Canon*, 534 F.2d 139 (9th Cir. 1976), *cert. den.* 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 (1976). Similarly, affidavits and material in a brief which offered facts for the first time to the appellate court cannot be considered because ". . . the Court of Appeals cannot go behind the record." *Smith v. United States*, 343 F.2d 539, 541 (5th Cir. 1965), *cert. den.* 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). The content of a record in this context is fixed by the activities at the trial level. Thus, the trial record may be supplemented by proceedings such as on motions to reconsider or for new trial, but it must affirmatively appear that the trial judge accepted the material. *Paramount Film Distributing Corp. v. Civic Center Theater, Inc.,* 333 F.2d 358 (10 Cir. 1964); *Lemley v. Christophersen*, 150 F.2d 291 (5th Cir. 1945). Our military practice is entirely consistent with

---

**4.** *See generally* the Fed.R.App.Proc.

**5.** Here we are not concerned with the parts of a military record engendered by the functions of

the convening authority, nor do we make any rule for collateral proceedings.

these concepts. *United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973).[6]

The defect in the present record is not to be overlooked, yet it does not require outright reversal of the case. The defect is the absence of a mandated trial level inquiry into certain factual conditions as to which testimony remains readily available. When dealing with guilty plea procedures, that sort of inquiry cannot be duplicated by an extrajudicial proceeding.[7] *Smude v. State,* 249 N.W.2d 876 (Minn.1976). The obvious answer is to return the case to the trial level. *Pollard, supra.* This procedure is common in Federal guilty plea practice, even to supply the whole of a missing voluntariness inquiry. *Walters v. Harris,* 460 F.2d 988 (4th Cir. 1972); *Jackson v. United States,* 489 F.2d 695 (1st Cir. 1974); *Green v. United States,* 446 F.2d 650 (6th Cir. 1970).[8] It is also the only practical way to produce the ". . . total transcript of the plea inquiry for the purpose of review", required by our military practice. *United States v. Lanzer,* 3 M.J. 60 (C.M.A.1977).

Thus, I dissent from the choice of procedures adopted in this case. However, I join in the result because appellant has made no offer or showing that inquiry will produce anything relevant. His attack on the trial procedure at this level can be taken only as a demand to withdraw his plea. That course is open in the post-trial context only to one who can establish the improvidence of his plea. *United States v. Barfield,* 25 U.S.C.M.A. 212, 54 C.M.R. 539, 2 M.J. 136 (1977). Absent such a showing his attack should be rejected and the proceedings below affirmed.

**6.** The affidavits accepted as determinative of appellate issues in *United States v. Webster,* 1 M.J. 216 (1975) and *United States v. Maxfield,* 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1970) are no exception to this general rule. Those cases are to be distinguished on the grounds of a lack of opposition to the filings and to the fact that the issue did not involve something directed to be "on the record."

**7.** Article 39(b), 10 U.S.C. § 839(b), provides ". . . All other proceedings . . . shall be made a part of the record and shall be in the

COOK, Senior Judge, with whom DRIBBEN, Judge, joins, dissenting:

I dissent.

## I

The genesis of my disagreement with the majority finds its source, I believe, in the penultimate sentence in Chief Judge Fletcher's opinion in *United States v. Green,* 1 M.J. 453 (1976), which reads:

"We will view a failure to conduct a plea bargain inquiry as a matter affecting the providence of the accused's plea after the implementation date of this opinion."

The majority appears to me to be engaged in an attempt to answer the question of the providency of appellant's guilty plea. Although I can understand how the quoted passage could be so interpreted, my reading of the *Green* opinion leads me to another conclusion. I believe the Court should be concerned solely with the question of whether the trial judge complied with the terms of that opinion before he decided the question of providency and accepted appellant's plea.

In my view the requirements set out in the *Green* decision were simply intended as appendages to the already extant requirements laid down in *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Now, in addition to the *Care* inquiries directed to the accused about his actual criminal culpability and his appreciation concerning his waiver of certain constitutional safeguards, the trial judge must also explore the terms, and the accused's understanding, of any plea bargain before he can decide to accept the accused's plea.[1] For

presence of the accused, the defense counsel, the trial counsel . . . ."

**8.** There is a tendency toward use of a harmless error test manifest in *United States v. Scharf,* 551 F.2d 1124 (8th Cir. 1977).

**1.** *See United States v. DeMinicis,* 47 C.M.R. 574 (N.C.M.R.1973), a pre-*Green* case, wherein the Court specifically held that inquiries concerning the pretrial agreement were not mandated by the *Care* decision.

me it follows that a failure by a trial judge to comply with this new requirement is to be treated on appeal just as *Care* advice omissions are treated. That is, the setting aside of any finding of guilty as to which the trial judge's dereliction relates.

## II

As I read the *Green* requirements, the trial judge, as part of the providency inquiry in a guilty plea case,

1. must assure on the record that the accused understands the meaning and effect of *each* condition in the pre-trial agreement, (emphasis from the *Green* decision),
2. must obtain the same assurance from the accused concerning the sentence limitations,
3. must secure from counsel for both sides their assurance that the written agreement incorporates all terms and conditions and,
4. must also secure counsel's concurrence that his interpretation of the agreement comports with theirs.

In the case *sub judice*, which was conducted after the effective date of the *Green* rule, the trial judge, after meeting the providency inquiry requirements specified in the *Care* decision (now to be found in paragraph 70b(2), change 1, MCM, 1969 (Rev.)), went on to explore the terms and conditions of the pretrial agreement.

In order to meet the requirement that he assure on the record that the accused understands each condition of the agreement, the trial judge read each provision aloud to appellant [2] with one marked exception. In three separate paragraphs in the agreement there appears an allusion to a written stipulation. In the first instance appellant agrees: "upon acceptance of [the] offer to enter into a written stipulation with the

trial counsel. . . ." The second reference reads: "I understand this offer and agreement and the fact that I have agreed to enter a stipulation of facts. If my plea is not accepted, this offer to stipulate is null and void." And the third mention of a stipulation states: "I further understand that this agreement will be automatically cancelled upon the happening of any of the following events:

\* \* \* \* \* \*

3. Modification at any time of the agreed stipulation of facts without the consent of the trial counsel or myself."

The sole inquiry the trial judge made concerning the matter of a stipulation was to inquire of the trial counsel, "Now, is there a stipulation of fact in this case?" To which the trial counsel replied, "There is not, your honor."

Patently, such a colloquy fails to meet the requirement for the judge to ascertain *the accused's* understanding of the terms of the agreement. More importantly, however, the judge failed to inquire about what appears, from the plain terms of the agreement, to be a critical provision. To merely determine that there isn't any stipulation raises more questions than it answers, vis-a-vis the agreement; *e. g.*, was the appellant relieved of his obligation to enter such a stipulation?; does the convening authority intend to live up to his portion of the agreement even though appellant has not been required to fulfill his part of the agreement?; does the appellant understand the status of the agreement since the demise of the stipulation?; etc. While it is obvious, by the repetitious references in the agreement to a stipulation of fact, that at one point in time it was thought to be an essential part of the agreement (and for this reason I cannot join those who find the judge's omission in this regard as inconse-

---

**2.** After reading aloud each condition verbatim he would inquire of the appellant, "Do you understand that?" or "Is that correct?" or some other equally terse question. In my view such perfunctory interrogation is not designed to elicit appellant's understanding of these terms. *See United States v. Terry*, 21 U.S.C.M.A. 442,

45 C.M.R. 216 (1972); *United States v. Wilson*, 19 U.S.C.M.A. 498, 499, 42 C.M.R. 100, 101 (1970); *United States v. Care, supra* at 541, 40 C.M.R. at 253; *United States v. Taylor*, 46 C.M.R. 461 (A.C.M.R.1972); *United States v. Shacket*, 44 C.M.R. 427 (A.C.M.R.1971).

quential), it is just as conspicuous that the appellant's understanding as to its present status is nowhere to be found in the record. This is precisely the type of obfuscation that the *Green* inquiries were designed to dispel.

After passing sentence, the trial judge read the quantum portion of the agreement aloud and engaged in the following colloquy:

"Now is that the entire agreement as to the sentence?"

Trial counsel replied:

"It is your Honor."

"MJ: And was that sentence agreement the understanding that you had with the Convening Authority?"

The appellant responded:

"Yes, Your Honor."

"MJ: Do you have any questions about it?"

To which appellant replied:

"No, Your Honor."

In my view, this exchange falls pathetically short of that necessary to establish on the record that appellant understood the *meaning and effect*, as opposed to his awareness of particular phraseology, of the sentence limitations. Representations that counsel has explained, and statements from appellant that he understands, are no substitutes for searching questions by the judge designed to establish the extent of appellant's true comprehension. As the quantum portion of the agreement is its very essence, a cursory inquiry in this area is particularly unacceptable.

As there is not even the vaguest evidence in the record that the trial judge inquired of counsel as to whether their understanding of the terms of the pretrial agreement comported with his own understanding of that agreement, as contemplated by the requirement that I have numbered as four, *supra*, that condition, as it is described in the *Green* decision, was in my view undisputably not met. I might be willing to subscribe to the majority's silence-is-concurrence approach to this omission were I able to find, as they do, a recital by the trial judge of his understanding of the agreement. But I find no such explanation in the record for anyone to concur in, by silence or otherwise.

The majority, however, as to these three areas of inquiry, searched the record and have thereby been able to glean enough facts to establish to their satisfaction that appellant did understand the agreement, to include the quantum portion of the sentence, and that counsel's understanding of the agreement comported with the trial judge's. I am at a loss to see how this is accomplished other than by engaging in wholesale speculation. The *Green* rule was imposed to obviate that necessity.

I cannot adopt the method employed by the majority in its efforts to overcome these three omissions by the trial judge. To do so would set the *Green* decision to nought and continue to sanction a discredited approach to the problem of establishing an adequate record for the purpose of determining providency in guilty plea cases.

### III

The majority concedes that the trial judge failed to meet my third enumerated *Green* requirement, *i. e.*, to secure counsel's assurance that the written agreement incorporates all the terms and conditions. They also appear to admit, by the solution they have adopted, that there is nothing in the record from which they can conjure a plausible substitute. Consequently, they have obtained sworn affidavits from counsel concerning the matter. Counsel therein assert that the written agreement contains the entire understanding of the parties.[3] I

---

**3.** Irrespective of what the affidavits assert, the record reveals that there was an unwritten understanding contrary to the plain language contained in the written agreement. As noted earlier in my opinion, appellant agreed in writing to enter into a stipulation of fact if his offer to plead guilty was accepted. As no stipulation was ever in fact entered into, it is obvious that this term of the written agreement was modified by some supplemental understanding, the scope of which was never explained in court. Consequently, if for no other reason I would

cannot abide this effort to amend the record of trial.[4] As I stated earlier, I read *Green* to mean that these inquiries concerning appellant's understanding of the terms of his pre-trial agreement must, just like the inquiries mandated by the *Care* decision, be made prior to the final acceptance of the guilty plea by the trial judge. A failure to do so is to be treated just as a *Care* violation would be. As I know of no cases in which this Court invoked its fact-finding powers to obtain a response to a *Care* inquiry omitted by the trial judge, I cannot sanction such a procedure in this case. While I recognize the distinction the majority draws between the nature and purpose of the *Care* inquiries versus those in *Green*, I am not persuaded that a different solution to a failure of compliance by the trial judge was intended. Both the *Care* and the *Green* decisions describe particular areas of inquiry which the trial judge must explore in depth before he is at liberty to determine that a guilty plea is provident. Additionally, the evidence of his labors must be spread upon the record. If he fails to do so, this Court is not at liberty either to perform that duty for him or to ignore those requirements and declare the plea provident.

Consequently, I would set aside the findings and sentence and authorize a rehearing.[5]

hold that there was a failure of compliance with the *Green* guidelines. That crucial arrangements, to which accused are not privy, do exist between opposing counsel is exemplified by *United States v. Troglin*, 21 U.S.C.M.A. 183, 44 C.M.R. 237 (1972).

4. In addition to the reasons I set out in the text for objecting in general to post-trial procedures to correct *Green* inquiry omissions, I believe the utilization of affidavits, which concern matters relevant to appellant's guilty plea, that are prepared and submitted, as in this case, without evidence that such was done with the knowledge and concurrence of the appellant is especially abhorrent.

5. Guilty pleas have historically been a source of concern to our Courts. *See* 4 W. Blackstone, Commentaries 329, where, speaking of guilty pleas, he states that the court "is usually very backward in receiving and recording such . . . and will generally advise the prisoner to retract it. . . ." The United States Supreme Court has observed "that a guilty plea is a grave and solemn act to be accepted only with care and discernment" (*Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)) and with the "utmost solicitude" (*Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed. 274 (1969)). The military, too, has traditionally been wary of guilty pleas. In Winthrop's Military Law and Precedents at page 277, we find "this plea is one which military courts, in common with civil, should not too readily receive. . . ." This reticence is bottomed on a fear that a guilty plea may be the product of "ignorance, incomprehension, coercion, terror, induce- ments, subtle or blatant threats" (*Boykin v. Alabama, supra* at 242, 89 S.Ct. at 1712). Our military Supreme Court has periodically expressed its anxiety specifically about pre-trial agreements in connection with guilty pleas. *See United States v. Wood*, 23 U.S.C.M.A. 57, 48 C.M.R. 528 (1974); *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968); *United States v. Welker*, 8 U.S.C.M.A. 647, 25 C.M.R. 151 (1958). Undoubtedly, these cases set the stage for the *Green* decision. While to some this solicitous attitude may appear to be an overweening concern for the interests of an admitted criminal, the *Care* and *Green* procedural safeguards are in reality no more onerous or stringent than those required by Article 31, UCMJ, 10 U.S.C. § 831, and *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), as predicates for the admission of an extrajudicial confession. Surely, if we demand strict compliance in the latter case it ill behooves us to indulge in a niggardly application of those protections afforded a defendant in connection with the acceptance of his judicial confession. Procedural safeguards are the backbone of our judicial system. As the author of the concurring opinion in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) stated at page 179, 71 S.Ct. at page 652, "It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law."