UNITED STATES, Appellee,

v.

James GREEN, Jr., Specialist Four, U. S. Army, Appellant.

No. 31,443.

U. S. Court of Military Appeals.

Aug. 13, 1976.

---

*Captain Sammy S. Knight* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey* and *Major Richard J. Goddard.*

*Captain William C. Kirk* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Major Steven M. Werner.*

## OPINION OF THE COURT

FLETCHER, Chief Judge:

Charged with robbery of a German national, the accused entered a plea of guilty before Judge Dennis R. Hunt in accordance with a pretrial agreement with the convening authority which limited the approved sentence to a bad-conduct discharge, confinement at hard labor for 12 months, and accessory penalties. During his inquiry into the providence of the plea, Judge Hunt examined the quantum portion of the pretrial agreement. This, appellant contends, prejudiced his right to have the trial judge arrive at an independent and impartial sentence. We granted review to reexamine the limitations upon, as well as the obligations of, the trial judge with regard to his examination of and inquiry into the terms of a negotiated plea bargain.

I

■ Appellant acknowledges that the propriety of the judge's action here was sanctioned in *United States v. Villa,* 19 U.S. C.M.A. 564, 567, 42 C.M.R. 166, 169 (1970):

We perceive no reasonable risk that other trial judges would be any less independent and impartial because they knew the sentence terms of a pretrial agreement. We conclude, therefore, that there is no reasonable risk that knowledge of the sentence provision of a pretrial agreement would incline the military judge to abstain from adjudging a less severe sentence than he would otherwise have imposed.

Nevertheless, it is suggested that *Villa* created only a presumption that a trial judge was capable of disregarding the terms of a pretrial agreement. Through statistical analysis of negotiated plea cases pending before the U.S. Army Court of Military Review, the appellant contends that the presumption in *Villa* has, in fact, been rebutted. Thus, we are urged to overrule *Villa* rather than to perpetuate a legal fiction. In effect, the defense seeks to substantiate statistically the view taken by

Judge Ferguson in his dissenting opinion in *United States v. Villa, supra* at 569, 42 C.M.R. at 171:

> It is, in my opinion, asking too much to expect . . . [a trial judge] to maintain an impartial disposition relative to sentence after he learns, through perusal of the pretrial agreement, that the initial appellate authority has already determined an appropriate sentence and that if he adjudges a sentence in excess thereof, the ultimate sentence must be reduced. Not infrequently, sentences returned by a court-martial are less than that agreed upon. Where this likelihood exists, perusal of the terms of the agreement undoubtedly would have an effect on the judge's decision.

The statistical data filed by appellate defense counsel reflect that in only 20 percent of the cases surveyed did the trial judge actually examine the quantum portion of the pretrial agreement before sentencing. This is in keeping with the guidance offered in the *Military Judges' Guide* :[1]

> Normally sound practice indicates that in a trial before a military judge alone, the military judge in inquiring into the providence of the plea should defer consideration of the provisions of the agreement relating to the quantum of the agreed punishment until after announcing sentence. . . . If after considering the quantum provisions the military judge determines for any reason that the plea was improvident, he must take appropriate corrective action.

Of the 20 percent of the cases in the survey in which the trial judge did examine the quantum portion of the pretrial agreement before announcing sentence, in only 12.5 percent of those cases did the judge actually announce a sentence less severe than that spelled out in the plea bargain. This is in contrast with the remaining 80 percent of the cases surveyed in which the trial judge did not examine the sentence provisions and adjudged more lenient sentences at a rate of 28.4 percent.

Appellate defense counsel also have digested 61 recent negotiated plea cases which came before Judge Hunt. In every case, he examined the quantum portion of the pretrial agreement before determining an appropriate sentence. In six cases (9.8 percent of the sample) the adjudged sentence was more lenient than that set forth in the plea bargain.

While it could be argued that the statistical data with regard to Judge Hunt's sentencing decisions suggests that he was influenced by the convening authority's limitations on the sentence to be approved, it is at least equally plausible that Judge Hunt simply adjudged more severe, yet nevertheless appropriate, sentences than the convening authority was willing to approve. Because the statistics with regard to Judge Hunt establish no impropriety and more likely than not merely reflect a general sentencing policy which differs somewhat from that of the convening authority, we conclude that there is no evidence indicating a failure to adjudge a fair, impartial, and appropriate sentence in this instance. Even so, the general statistical data presented does illuminate a disturbing trend which should prompt every trial judge to reconsider the recommendation previously mentioned from the *Military Judges' Guide.* Adherence to the procedure set forth therein will not affect the judge's ability to determine the providence of a plea, yet it may enhance the perceived fairness of the sentencing process.

## II

■ Our discussion thus far has focused upon limitations on the trial judge's inquiry into the terms of a pretrial agreement. Of equal importance are his affirmative obligations insofar as negotiated pleas are concerned. In a concurring opinion in *United States v. Elmore,* 1 M.J. 262, 264–65 (1976), I observed that trial judges, as part of their inquiry into the providence of a guilty plea, should carefully inquire into the terms and conditions of any existing pretrial agreement:

---

1. Department of the Army Pamphlet No. 27–9, at 3–5 n. 3 (May 14, 1970).

[T]he trial judge must shoulder the primary responsibility for assuring on the record that an accused understands the meaning and effect of *each* condition as well as the sentence limitations imposed by any existing pretrial agreement. Where the plea bargain encompasses conditions which the trial judge believes violate either appellate case law, public policy, or the trial judge's own notions of fundamental fairness, he should, on his own motion, strike such provisions from the agreement with the consent of the parties.

In addition to his inquiry with the accused, the trial judge should secure from counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties and that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain.

We are not unmindful of the additional burden such an inquiry would place on the trial judiciary. Nevertheless, the propriety and meaning of various plea bargain provisions remains a fertile source of appellate litigation. *E.g., United States v. Elmore, supra; United States v. Kapp,* 23 U.S.C. M.A. 442 n. 50 C.M.R. 461 n. 1 M.J. 58n. (1975); *United States v. Holland,* 23 U.S. C.M.A. 442, 50 C.M.R. 461, 1 M.J. 58 (1975). Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understandings between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently

made. *See* Article 45(a), Uniform Code of Military Justice, 10 U.S.C. § 845(a). Finally we believe trial judges must share the responsibility, which until now has been borne by the appellate tribunals, to police terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness.

We, therefore, hold that as part of all *Care*[2] inquiries conducted 30 days or more after the date of this opinion, the trial judge shall ascertain whether a plea bargain exists and, if so, shall conduct an inquiry into the pretrial agreement in accordance with the *Elmore* guidelines previously enunciated.[3] Inquiry into the actual sentence limitations specified in the plea bargain should be delayed until after announcing sentence where the accused elects to be sentenced by the military judge rather than a court with members. We will view a failure to conduct a plea bargain inquiry as a matter affecting the providence of the accused's plea after the implementation date of this opinion.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

COOK, Judge (concurring in part, dissenting in part):

It seems to me that there is an inherent conflict between requiring, as the majority do, an inquiry into a plea agreement and the admonition that examination of its "sentence limitations" should be delayed until after imposition of sentence. In *United States v. Villa,* 19 U.S.C.M.A. 564, 566, 42 C.M.R. 166, 168 (1970), the Court observed that "disagreement as to the meaning and scope of the sentence provision in a pretrial agreement is not uncommon." As the

---

2. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

3. *Compare United States v. Wood,* 23 U.S.C. M.A. 57, 48 C.M.R. 528 (1974), *with* Fed.R. Crim.P. 11. *See also* Thorne, "Guilty Pleas in

Court now enlarges the *Care*[1] inquiry to cover the "terms and conditions" of a pretrial agreement, there is, in my opinion, more reason to require examination as to the terms and conditions of the sentence provided by the agreement than there is to put off inspection of that part of the agreement until after adjudgement of sentence. At that point in the proceedings it may be too late for the trial judge to do anything about a misapprehension on the part of the accused as to the meaning and effect of the sentence portion of the agreement. *See* Article 45(b), Uniform Code of Military Justice, 10 U.S.C. § 845(b); paragraph 70*b*, Manual for Courts-Martial, United States, 1969 (Rev.). In any event, a *Care* inquiry requires the trial judge to find that the accused's plea of guilty is voluntary and that it was made with full understanding of the factual basis of the charge and of its effects, including the waiver of various rights the accused would have if the Government were required to prove the charge. As the inquiry must now include the terms of a pretrial agreement, I assume similar findings of voluntariness and understanding should be made as to the agreement. Manifestly, if no inquiry is had as to the terms of the sentence, no findings can be entered as to this aspect of the agreement.

The majority acknowledge that military law authorizes the trial judge to examine the sentence portion of the pretrial agreement before he imposes sentence. Why, then, should he be required to defer examination of that portion of the agreement until after sentence is imposed. As current law does not require such a truncated procedure, I do not think this Court should require it.

the Military—The Impact of Rule 11," 39 The Army Lawyer 3 (February (sic March) 1976).

1. *United States v. Care*, 18 U.S.M.C.A. 535, 40 C.M.R. 247 (1969).