**UNITED STATES**

v.

**Stephen P. WILSON, 022 46 9160, Private (E–1), U. S. Marine Corps.**

**NCM 77 1655.**

U. S. Navy Court of Military Review.

Sentence Adjudged 28 June 1977.

Decided 29 Nov. 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

CAPT Christopher Miller Klein, USMC, Appellate Government Counsel.

Before CEDARBURG, C. J., and ROOT and GREGORY, JJ.

ROOT, Judge:

Appellant was convicted at a special court-martial bench trial of three specifications of violating Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, by transferring quantities of crystal methedrine and hashish. He was also convicted of unauthorized absence in violation of Article 86, Uniform Code of Military Justice. He was sentenced to confinement at hard labor for 3 months, to forfeiture of $225.00 per month for 3 months and to a bad conduct discharge. In accordance with the terms of a pretrial agreement, the convening authority approved only confinement at hard labor for 2 months, forfeiture of $225.00 per month for 2 months and the bad conduct discharge. The supervisory authority approved the sentence as approved by the convening authority.

Appellant has assigned the following errors for the consideration of this Court:

I. APPELLANT'S PLEAS WERE RENDERED IMPROVIDENT AS A RESULT OF THE MILITARY JUDGE'S FAILURE TO PROPERLY AND SUFFICIENTLY INQUIRE INTO THE TERMS OF THE PRETRIAL AGREEMENT. *UNITED STATES V. GREEN*, 52 C.M.R. 10, 1 M.J. 453 (1976); *UNITED STATES V. ELMORE*, 51 C.M.R. 254, 1 M.J. 262 (1976); *UNITED STATES V. WILDS*, NO. 77 0200 (N.C.M.R. 29 APRIL 1977), *PET. GRANTED*, NO. 34,500, 3 M.J. 426 (U.S.C.M.A.1977); *UNITED STATES V. TOMPKINS*, NO. 77 0771 (N.C.M.R. 10 MAY 1977), *PET. GRANTED*, NO. 34,543, 3 M.J. 426 (U.S.C.M.A.1977); *UNITED STATES V. STANCIL*, NO. 77 0418 (N.C.M.R. 13 APRIL 1977), *PET. GRANTED*, NO. 34,498, 3 M.J. 389 (U.S.C.M.A.1977); *UNITED STATES V. THOMAS*, NO. 77 0799 (N.C.M.R. 17 MAY 1977), *PET. GRANTED*, NO. 34,542, 3 M.J. 389 (U.S.C.M.A.1977); *UNITED STATES V. SOTO*, NO. 77 0546 (N.C.M.R. 11 MAY 1977), *PET. GRANTED*, NO. 34,434, 3 M.J. 383 (U.S.C.M.A.1977).

II. A SENTENCE TO AN UNSUSPENDED BAD CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE IN VIEW OF APPELLANT'S PLEAS OF GUILTY, HIS DECLARED REMORSE AND WILLINGNESS TO ACCEPT HIS PUNISHMENT AND HIS RELATIVE YOUTH AND IMMATURITY.

The second assignment we reject instanter as being without merit. We hold that the first assignment is meritorious, however, in light of *United States v. King*, 3 M.J. 458 (C.M.A.1977).

In *United States v. Elmore*, 51 C.M.R. 254, 256, 1 M.J. 262, 264 (1976), the opinion of Chief Judge Fletcher, concurring in the result, furnished insight into his thinking that:

> . . . as part of the *[U. S. v.] Care* [18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969)] inquiry, the trial judge must shoulder the primary responsibility for assuring *on the record* that an accused understands the meaning and effect of *each* condition as well as the sentence limitations imposed by any existing pretrial agreement. [Emphasis supplied].

In a later case, *United States v. Green*, 52 C.M.R. 10, 1 M.J. 453 (1976), the holding of the Court of Military Appeals elaborated on *Elmore* and adopted the guidelines which hitherto had represented only the thinking of Chief Judge Fletcher, as follows:

> We, therefore, hold that as part of all *Care* inquiries conducted 30 days or more after the date of this opinion, the trial judge shall ascertain whether a plea bargain exists and, if so, shall conduct an inquiry into the pretrial agreement in accordance with the *Elmore* guidelines previously enunciated . . . We will view a *failure* to conduct a plea bargain inquiry as a matter *affecting* the providence of the accused's plea after the implementation date of this opinion. [Emphasis supplied, footnotes omitted].

During the *Care* inquiry proceedings prior to findings in the instant case, the military judge discussed with the appellant the conditions of the pretrial agreement. His inquiry was detailed and protracted, evidencing a good faith effort to determine if the guilty plea was providently and voluntarily made. He specifically did not examine the sentence limitation terms prior to acceptance of the pleas and imposition of the sentence and, thus, gave effect to the majority admonition of *Green* that such inquiry be delayed until after announcement of the sentence. He did, however, apparently in an effort to satisfy himself prior to accepting the guilty pleas that appellant understood the sentence limitations, pose hypothetical questions relating to reduction in grade, confinement at hard labor, and bad conduct discharge. The hypothetical questions he posed did not include the effect of any forfeiture which might be adjudged. The appellant was able to respond appropriately to these hypothetical questions. He demonstrated a general, non-specific knowledge of the meaning and effect of limitations upon some sentences which might be awarded by the trial judge. The trial judge also ascertained from both trial and defense counsel that there were no other agreements or understandings among the parties to the written agreement. After announcing the sentence, the trial judge discussed with the trial defense counsel the application of the pretrial agreement limitation on the forfeiture awarded by the court in this case. He did not, however, query the appellant as to his understanding of the specific limitations upon the actual sentence which had been awarded by the court.

The posture of this case is typical of substantial numbers of guilty plea cases involving pretrial agreements which reach this Court since the *Green* decision. Judging from the number of reviews granted by the Court of Military Appeals on the issue of the adequacy of trial judges' inquiries into pretrial agreements, this phenomenon is paralleled in cases now before the Court of Military Appeals which were previously affirmed by the Courts of Military Review and in which the adequacy of the trial judges' inquiries was never challenged by appellate counsel or recognized as an issue by the Courts of Military Review. The trial bench not only has obviously read the *Elmore* and *Green* cases, but also the antecedent cases dealing with conditions in pretrial agreements affecting plea providency. It is apparent that their reading of these cases for guidance did not convey to them the intent that each evolutionary exposition constituted a rigid, inflexible requirement which would render a plea improvident for want of exact compliance. Neither were they so construed by the Courts of Military Review. Appellate counsel, when pressed on oral argument to itemize all necessary steps in an acceptable inquiry procedure, were unable to define the degree of specificity required by the controlling decisions. Predictably, what they did urge as "conditions" of pretrial agreements, requiring inquiry, varied widely and materially, depending upon whose perspective—Government or defense—was articulated. Absent further refinement and definition of the term, this Court can only make a good faith effort at construction.

 In the case before us, an extensive and detailed inquiry into the plea bargain was made. Thus, there was not the *failure* which was alluded to in the final conclusion of *Green*. We are similarly convinced from the inquiry spread on the record that there are no secret agreements nor any ambiguities which lurk behind the present agreement. More importantly, the entire record supports to certitude a conclusion that the guilty pleas in this case were providently and voluntarily made. The reasons expressed in *Green* for the plea bargain inquiries would thus appear to be satisfied.

A precise reading of *United States v. King, supra,* leads to a different conclusion, however. *United States v. Green, supra,* not only cautioned compliance with the guidelines enunciated in the concurring opinion in *Elmore,* but, read literally, its specific holding dealing with sentence limitations, requires that the accused be questioned regarding the sentence limitations

specified in the plea bargain, and that such questioning be conducted after announcement of sentence when the accused elects to be sentenced by the military judge. No such sentence inquiry was conducted in this case. In *King, supra,* at 459, it was stated:

> Since we believe that the whole purpose of *Green,* as set forth earlier in this opinion, is thwarted unless its terms are strictly adhered to, we decline either to attempt to "fill in" a record left silent because of the trial judge's omission or to develop a sliding scale analysis whereby "substantial compliance" becomes our standard for review. [Footnote omitted].

Strict adherence to the holding of *King* does not permit the exercise of judgment in determining whether the expressed reasons for the inquiry procedure have been satisfied. Simply stated, if any of the terms of the procedure evolved by, but only generally defined in *Green* are left out, there is non-compliance requiring reversal. We consider this standard unnecessarily harsh in evaluating its ultimate reason for existence—basic notions of fundamental fairness. The net result is disastrous in substantial numbers of plea bargained cases because—whether it be due to a universal lack of divination of the specific requirements imposed by the *Elmore, Green* and *King* line of cases, or to a good faith inability to apply a comprehensible standard—the providency and voluntariness of such agreements, and thus the correctness in law of each case is imperiled. We are confident that this was not the intent of the Court of Military Appeals when it fashioned this sapient rule of judicial scrutiny for pretrial agreements; but we are nevertheless constrained to give effect to such an anomalous result by an ordinary construction of the words of *King, supra.*

The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge CEDARBURG and Judge GREGORY concur.