**UNITED STATES, Appellee,**

v.

**Specialist Four William L. WINKLER, SSN 449–17–1204, United States Army, Appellant.**

**CM 436650.**

U. S. Army Court of Military Review.

31 July 1978.

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, and Major Andrew W. Maron, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major Steven M. Werner, JAGC, and Captain Richard A. Canatela, JAGC, were on the pleadings for appellee.

Before CLAUSEN, CARNE and COOK, Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

Appellant was convicted, pursuant to his pleas of guilty, of maiming, in violation of Article 124, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 924, and assault on a child under the age of sixteen years, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The offenses arose out of separate instances of particularly cruel treatment of two children adopted by the appellant and his wife, a boy approximately one and one-half years of age and a girl approximately two and one-half years old. The appellant raised only one error regarding the providence of his plea to Charge II. We will address two matters affecting providence in the resolution of this case.

■ The error alleged is that the military judge applied the wrong standard in determining whether appellant could defend the beating of his baby girl on the basis of lawfully administering discipline to the child. Appellate defense counsel acknowledges that the questions by the military judge conformed to the standard of the reasonableness of the acts, which is applied as the majority rule. He nevertheless urges this Court to apply the minority rule standard of malice which, it is argued, has been adopted in the military, citing *United States v. Moore,* 30 C.M.R. 901 (A.F.B.R. 1960), *rev'd on other grounds,* 12 U.S.C.M.A. 696, 31 C.M.R. 282 (1962), and *United States v. Schieffer,* 28 C.M.R. 417 (A.B.R.1959). *See also United States v. Houghton,* 31 C.M.R. 579, 598 (A.F.B.R.1961), *aff'd* 13 U.S.C.M.A. 3, 32 C.M.R. 3 (1962). A close reading of those decisions, however, reveals that the distinction is academic as applied to appellant, because they make it clear that any brutal act (*i. e.,* beyond reasonable limits) which results in injury is proof of malice and of guilty intent. We need not decide as between the two standards, therefore, as both are met under the facts of this case. The questions asked and the responses received during the providence inquiry clearly demonstrate the appellant's awareness that his acts were beyond the scope of permissible physical discipline and were done with the knowledge that he was inflicting serious damage on his child and that he should have discontinued.

■ Appellant entered his pleas pursuant to a pretrial agreement with the convening authority. The military judge conducted an inquiry into the terms and conditions of that agreement as required by *United States v. Green,* 1 M.J. 453 (C.M.A.1976). In doing so, she did not specifically delineate and inquire into or explain each of the automatic cancellation provisions. Those provisions were as follows:

I further understand that this agreement will be automatically cancelled upon the happening of any of the following events:

1. Inability to reach agreement with the trial counsel on an agreed stipulation;

2. Modification or withdrawal at any time of the agreed stipulation of facts without the consent of trial counsel and myself;

3. Withdrawal by either party from this agreement prior to acceptance of my plea;

4. My failure to enter a plea of Guilty prior to presentation of evidence on the merits;

5. The changing of my plea by myself or on my behalf during trial from guilty to not guilty;

6. The refusal of the court to accept my plea of guilty.

The parties at trial engaged in the following colloquy relating to those provisions:

MJ: All right. Specialist Winkler, on the bottom of page two, it talks about the fact that this agreement will be automatically cancelled upon any of the following events—and the first one being in the event you and trial counsel cannot arrive at an agreed stipulation. Is that your understanding?

TC: Yes, your Honor.

MJ: Now, is there going to be a modification to the stipulation concerning 7 versus 8 July?

DC: The Stipulation of Fact, there will be no change to that Stipulation of Fact, your Honor.

MJ: All right. No party has indicated a withdrawal from the agreement at this time.

Specialist Winkler, is there anything at all that you do not understand concerning the meaning and effect of your plea of guilty?

ACCUSED: No, your Honor.

MJ: Do you in fact believe you understand the meaning and effect of your plea of guilty?

ACCUSED: Yes, I do, your Honor.

MJ: Do you have any questions at all about anything we have discussed here this morning?

ACCUSED: No, your Honor, I don't.

This inquiry, together with what had transpired up to that point in time, was sufficient to establish that an agreement had been reached on the stipulation of fact (which was already admitted), that there would be no further modification of the stipulation, that there had been no withdrawal from the agreement, and that appellant had timely entered his plea. When coupled with the trial judge's repeated inquiries regarding appellant's understanding of the meaning and effect of his plea and of the discussion concerning his agreement, we find that this procedure satisfied any need to inquire specifically into the automatic cancellation provisions with regard to numbers 1 through 4 above, and, when coupled with the proper explanation of the appellant's right to withdraw his plea, satisfied the general requirements with regard to numbers 5 and 6. This case presents a situation unlike those inquiries wherein no comment is made on any specific provisions of the standard automatic cancellation paragraph, let alone those in which no attempt is made even to reference generally that portion of the agreement pertaining to automatic cancellation of the agreement.

We do not hold that automatic cancellation provisions need not be inquired into to satisfy the mandate of the Court of Military Appeals in *Green*. Nor do we believe that satisfaction of that mandate can be met by substantial compliance with any aspect of the required inquiry. *See United States v. King*, 3 M.J. 458, 459 (C.M.A.1977). What we hold by our decision in this case is that where there is an inquiry regarding automatic cancellation provisions which, in our view, enabled the trial judge to "assur[e] on the record that an accused understands the meaning and effect of *each* condition," *United States v. Green*, 1 M.J. at 456, there has been full compliance with the *Green* mandate. No specific manner of inquiry has been required by the higher court to satisfy their own mandate, and we will require none. Accordingly, as we view the instant inquiry to have been in full compliance with that mandate, the providence of appellant's pleas was unaffected.

The findings of guilty and the sentence are AFFIRMED.

Chief Judge CLAUSEN concurs.

COOK, Judge, concurring in part and dissenting in part:

I concur in the resolution of the assertion of error concerning the proper legal standard vis-a-vis parental discipline. I cannot agree, however, that the trial judge met the requirements of *United States v. Green*,[1] in her inquiry into the terms of the pretrial agreement.

This is a classic example of a hard case making bad law.[2] I defer to no one in my conviction that any parent who abuses his privileged position by tyrannizing his helpless and trusting child, as this appellant confessed to doing, is deserving of the harshest kind of retribution. Nevertheless, the maintenance of a civilized society also

---

1. 1 M.J. 453 (C.M.A.1976).

2. "Hard cases make bad law." Ram, *Legal Judgement* 116 (1871) (attributed to Lord Tenterden).

demands that such retribution be imposed in an orderly consistent manner,[3] even in instances of the most heinous crimes.

The inquiry of the appellant concerning the six automatic cancellation provisions, quoted in its entirety in the majority opinion, falls manifestly short, in my view, of obtaining the appellant's understanding of the meaning and effect of each condition of his pretrial agreement. Contrary to the perception of the majority, my visual acuity does not reveal any reference by the trial judge to the conditions mentioned in paragraphs 4 through 6 and, necessarily, the record does not divulge the appellant's understanding of those clauses.

Finally, I do not believe that the mere recitation by the trial judge of the quantum portion of the agreement, as was done in this case, establishes the appellant's appreciation of its meaning and effect. True, the trial judge explored the matter in some depth after the jury announced its sentence, but, in a trial with members, as I read *United States v. Green, supra,* the entire inquiry is to be accomplished *prior* to the acceptance of the guilty plea.

In any event, the trial judge failed to strictly adhere to the terms of *United States v. Green, supra,* as compelled by the decision in *United States v. King,* 3 M.J. 458 (C.M.A.1977), and therefore the appellant should be permitted to plead anew.

---

**3.** "One of the most fundamental social interests is that the law shall be uniform and impartial." Cardozo, *Nature of Judicial Process,* 112.