UNITED STATES, Appellee,

v.

Private E2 Andrew JACKSON, Jr., 377–76–4072, United States Army, Appellant.

ACMR 8901273.

U.S. Army Court of Military Review.

28 Feb. 1990.

For appellant Captain Ralph L. Gonzalez (argued), Captain Timothy P. Riley, JAGC (on brief).

For appellee Captain George R. Johnson, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Mark E. Frye, JAGC (on brief).

Before KANE, WERNER and NEURAUTER, Appellate Military Judges.

OPINION OF THE COURT

WERNER, Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of desertion, making a false official statement, and fraudulently uttering worthless checks in violation of Articles 85, 107, and 123a, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 885, 907 and 923a (1982 and Supp III). His approved sentence includes a bad-conduct discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant contends that the military judge erred to his prejudice by failing to *sua sponte* strike certain evidence of uncharged misconduct contained in a stipulation of fact appended to the pretrial agreement. In essence, he asserts that the evidence should have been ruled inadmissible because it was unrelated to the charges to which appellant had offered to plead guilty. The relevant portions of the stipulation of which appellant now complains relate the following:

It is hereby agreed by and between the trial and defense counsel, with the express consent of the accused, Private E2

Andrew Jackson Jr., that the following facts are true and admissible:

\* \* \* \* \* \*

The accused admits that in the past he has pursued a number of different criminal opportunities in hopes of personal financial gain. He admits that ... he has engaged in many different criminal pursuits in diverse locations throughout the United States.

The accused admits that ... when he was twenty-one years old, he was involved in a robbery in Detroit, Michigan. He has been involved in more than one incident involving stolen automobiles. The most recent case resulted in his arrest in Christian County, on 6 July 1988, when he was found in possession of a 1984 Porsche automobile, reported stolen from a Nashville location on 22 June 1988. Earlier in April 1988, the accused admits to being criminally involved in another incident involving a stolen automobile, this time in Dayton, Ohio.

The accused admits that on 27 July 1988, he was convicted in Davidson County, Tennessee of forgery. He admits that on 24 February 1989, he was convicted in Montgomery County, Tennessee, of receiving stolen property under $200.00 in value. Furthermore, the accused admits that the Montgomery county conviction was a result of a pretrial agreement in which the accused entered a plea of guilty to the offense for which he was convicted in return for the state's prosecutor not going forward on charges of second degree burglary and larceny.

Although he did not object at trial to the judge considering the evidence of uncharged misconduct set forth in the stipulation, appellant now presents three arguments in support of his belated assertion of error. These are: 1) the uncharged misconduct described in the stipulation exceeded the terms of the pretrial agreement; 2) its admission impermissibly expands the scope of Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter R.C.M.] 705(c)(2)(A);[1] and 3) the uncharged misconduct was inadmissible under R.C.M. 1001(b)(4) as it was not an aggravating circumstance "directly relating to or resulting from the offenses of which the accused has been found guilty." We hold that appellant's contention is without merit.

During presentencing, the appellant made an unsworn statement in which he explained that his financial problems and inability to support his family caused him to fraudulently utter the checks involved in the charges to which he pled guilty. He also indicated that his record of civilian convictions and resultant jail time and the fact that he had "been in and out of trouble all my life" convinced him he should change his ways in the future. He planned on returning to his home in Detroit where he could "get my old job back" and take care of his family.

In arguing for leniency, the defense counsel stated:

Your Honor, the defense would ask you to keep two things in mind when you're setting your sentence. The first is that Private Jackson spent some jail time downtown; he spent seven, approximately seven months downtown, and that was indeed punishment. You heard him talking about getting beat up three times down there. He knows in his head that his actions in this case contributed to that mess downtown that he's in, and he has felt the arm of punishment. He's been in jail since, I guess it was last November, or approximately ten months ago. We'd also ask that you take into account that he has two children back in Detroit. Detroit is not the most friendly town in the world. We ask that you look at the purpose of punishment. His punishment, the purpose that his punishment would serve, have already been accomplished in his case because he knows that

---

**1.** (2) Permissible terms or conditions. Subject to subsection (c)(1)(A) of this rule, subsection (c)(1)(B) of this rule does not prohibit an accused from offering the following additional conditions with an offer to plead guilty:

(A) A promise to enter into a stipulation of fact concerning offenses to which a plea of guilty or as to which a confessional stipulation will be entered;....

the time he spent in jail already could have been avoided by conducting himself in a proper manner.

The defense therefore would ask for a minimal amount of time in jail, if any, and that the judge, that the court at least leave Private Jackson something by which to support his children back in Detroit.

## I

The question of the admissibility of the evidence of uncharged misconduct appearing in a stipulation of fact has been examined by the Court of Military Appeals in *United States v. Glazier*, 26 M.J. 268 (C.M.A.1988), and *United States v. DeYoung*, 29 M.J. 78 (C.M.A.1989). In *Glazier*, the Court of Military Appeals held:

> Subject to limitations which might be imposed by the military judge "in the interest of justice," R.C.M. 811(b), we see no reason why evidence, even though otherwise inadmissible under the Military Rules of Evidence, cannot come into the trial by way of stipulation. *See United States v. Kinman*, 25 M.J. 99, 100 n. 2 (C.M.A.1987). This is particularly true in a negotiated guilty plea where the accused is willing to stipulate to otherwise inadmissible testimony in return for a concession favorable to him from the Government assuming no overreaching by the Government. *See United States v. Zelenski*, 24 M.J. 1 (C.M.A.1987); *United States v. Jones*, 23 M.J. 305 (C.M.A.1987).

Because the military judge has a responsibility under the Military Rules of Evidence to determine admissibility and under R.C.M. 811 to ensure "the interest of justice," we reject the suggestion found in the Court of Military Review's opinion in *United States v. Taylor*, 21 M.J. 1016 (A.C.M.R.1986), that the military judge cannot act on objections to matters in the stipulation. It is true that if an accused withdraws from the stipulation, it fails, as does the agreement underlying the stipulation. However, merely because counsel with the consent of the accused, agreed that something is true does not make that fact *per se* ad-missible. The stipulation should be unequivocal that counsel and the accused agree not only to the truth of the matters stipulated but that such matters are admissible in evidence against the accused. Then and only then can there be no doubt as to the full agreement and understanding of the parties.

*United States v. Glazier*, 26 M.J. at 270.

In *DeYoung*, the Court held that where a stipulation appended to a pretrial agreement contained a clause in which the accused agreed not only to the truth of the acts of uncharged misconduct but to their admissibility as well, there was a waiver of "any defect in the form of proof of these acts of misconduct." *United States v. DeYoung*, 29 M.J. at 81. Moreover, the Court also found there was no overreaching by the Government in obtaining the stipulation:

> Appellant bargained for sentence limitations in exchange for his pleas and other concessions, signed the agreement and eventually accepted the stipulation at trial. He was not forced to enter guilty pleas or join the stipulation of fact. Moreover, as the court below properly noted in its opinion, attorneys for the Government have an ethical responsibility to avoid bringing inadmissible matters before a court-martial merely for the purpose of inflicting gratuitous injury upon an accused.

*United States v. DeYoung*, 29 M.J. at 81 (citations omitted).

As in *Glazier* and *DeYoung*, the stipulation of fact here contained a clause in which the accused waived objection to the truth and admissibility of the uncharged misconduct. Moreover, unlike the situations in those cases, the defense counsel here did not object to the content of the stipulation during trial. Had this "omission" occurred in the course of the sentencing proceeding, we would have no hesitancy about applying waiver absent plain error. Mil.R.Evid. 103(a)(1). We see no reason why a failure to object to the admission of uncharged misconduct introduced by way of stipulation appended to a pretrial

agreement should be treated differently in the absence of overreaching by the government.

We find that there was no overreaching by the government in negotiating the admission of the stipulation of fact. The record does not demonstrate that appellant was coerced into executing the stipulation of fact. To the contrary, the defense's tactic during sentencing was to paint a portrait of the appellant as a socially deprived individual who had lived a life of crime but who was now motivated to change his wicked ways in order to support his family. In both the defense counsel's argument and appellant's unsworn statement, there are numerous references to appellant's familiarity with prison life and willingness to reform. His agreement to stipulate to uncharged misconduct—which appears to have been unrelated to the charges—was therefore not inconsistent with his trial tactic. Although this is an unusual tactic to obtain a reduced sentence, there is no evidence in the record suggesting that it was unfairly coerced by the government or otherwise violated public policy. *See Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

## II

■ The appellant also contends that the military judge failed to comply with the requirements of *United States v. Green*, 1 M.J. 453 (C.M.A.1976), by failing to conduct an adequate inquiry on the record to insure appellant understood that the pretrial agreement required him to stipulate to inadmissible uncharged misconduct. We disagree.

Appellant's contention is more accurately premised upon *United States v. King*, 3 M.J. 458 (C.M.A.1977), a decision which amplified the holding in *Green*. In *Green*, the Court first expressed its concern over potential abuse of power by the convening authority in the plea bargaining process. *See also United States v. Holland*, 1 M.J. 58 (C.M.A.1975). Then it announced a rule designed to "enhance public confidence in the plea bargaining process ... [and] pro-

vide invaluable assistance to appellate tribunals by exposing any secret understandings between the parties and by clarifying on the record any ambiguities which lurk within the agreements." *United States v. Green*, 1 M.J. at 456. The rule provided that:

[T]he trial judge must shoulder the primary responsibility for assuring on the record that an accused understands the meaning and effect of each condition as well as the sentence limitations imposed by any existing pretrial agreement.

. . . . .

In addition to his inquiry with the accused, the trial judge should secure from counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties and that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain.

*Id.* (quoting *United States v. Elmore*, 1 M.J. 262, 264–65 (C.M.A.1976) (Fletcher, C.J., concurring).

Failure to comply with the rule rendered the plea of guilty improvident. In *King*, the Court elevated the parameters of the rule to near prophylactic status by holding that it would not "develop a sliding scale analysis whereby 'substantial compliance' becomes our standard for review." *United States v. King*, 3 M.J. at 459. However, in *United States v. Passini*, 10 M.J. 108 (C.M.A.1980), the Court sustained a *Green–King* inquiry which reflected only substantial compliance with the rule. The facts in *Passini* reflected that the judge did not ask both counsel whether their understanding of the agreement comported with that of the judge. The Court held that because the agreement was "so straightforward and simple that it is susceptible only to one interpretation," the plea would not be set aside.

We hold that the military judge's inquiry into the accused's understanding of the meaning and effect of the stipulation of fact not only complied with *Passini*, but also met the test of *Green–King*. The

pretrial agreement contained the following pertinent clauses:

If so requested, I agree to enter into a written stipulation concerning the facts and circumstances of the charge and its specification, which will be made available to the military judge for his use during his providency inquiry, and entered into evidence during the sentencing phase of the trial. If my pleas are not accepted, the stipulation is null and void.

I understand that this agreement will be automatically cancelled upon the happening of any of the following events:

1. Failure of agreement with the trial counsel on the contents of the stipulation of fact;

2. The modification at any time of the stipulation of fact without consent of the trial counsel, my defense attorney, or myself;

The record reflects that the military judge read the stipulation of fact to appellant during the providence inquiry. The appellant expressly acknowledged that he agreed with the facts contained therein, consented to the judge considering them as evidence and understood that if he refused to enter into the stipulation or subsequently altered it without the consent of the trial counsel, it would result in cancellation of the agreement. We find no basis for concluding that appellant did not understand the significance of the stipulation of fact in the context of the pretrial agreement. Appellant has argued, however, that the judge should have gone further and advised appellant that the evidence of uncharged misconduct was inadmissible and thereafter obtained his affirmative assent to its consideration during sentencing. We disagree that such advice is required by the *Green–King* rule and decline to adopt a more expansive rule.

The findings of guilty and the sentence are affirmed.

Senior Judge KANE and Judge NEURAUTER concur.