UNITED STATES, Appellee,

v.

Private First Class Frankie J. CRUSE,
United States Army, Appellant.

ARMY 9601948.

U.S. Army Court of Criminal Appeals.

15 Sept. 2000.

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA (on brief).

For Appellee: Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Paul T. Cygnarowicz, JA (on brief).

Before MERCK, Senior Judge, CASIDA, and TRANT, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

CASIDA, Judge:

### HISTORY AND CURRENT POSTURE

On 22 November 1996, a general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted unpremeditated murder, absence without leave (AWOL), maiming, and intentional self-injury, in violation of Articles 80, 86, 124, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 886, 924, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1. On 16 March 1999, this court set aside the findings and sentence pursuant to Article 66, UCMJ, 10 U.S.C. § 866, and authorized a rehearing.

*See United States v. Cruse*, 50 M.J. 592 (Army Ct.Crim.App.1999).

At the rehearing, appellant elected trial before military judge alone and pled guilty to the offenses of which he had been convicted at his 1996 court-martial in exchange for a pretrial agreement. The military judge accepted appellant's pleas and sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of Private E1. The pretrial agreement provided that the convening authority would defer any adjudged confinement until taking action, and would then approve no confinement in excess of confinement already served. The pretrial agreement also provided that the convening authority would approve a punitive discharge no more severe than a bad-conduct discharge. The convening authority complied with the agreement.

The case is again before the court for further review under Article 66, UCMJ. We have considered the record of trial, appellant's two assignments of error,[1] and the government's reply thereto. Both assignments of error involve appellant's claim that his pleas of guilty were improvident because he was not informed by his trial defense counsel or by the military judge that the approved sentence at his first court-martial limited the maximum sentence that could be approved by the convening authority after the rehearing.

### FACTS

During the providence inquiry, the military judge, with concurrence of both trial and defense counsel, correctly determined that the maximum sentence he could impose was a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to the grade of Private E1,

---

1.

I

APPELLANT'S PLEA [SIC] OF GUILTY IS IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO INFORM APPELLANT THAT ANY PUNISHMENT IN HIS SECOND COURT–MARTIAL WAS CAPPED BY HIS FIRST COURT–MARTIAL.

II

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND WAS PREJUDICED WHEN HIS TRIAL DEFENSE COUNSEL FAILED TO ADVISE APPELLANT THAT THE SENTENCE HE WOULD RECEIVE AT HIS RETRIAL COULD NOT EXCEED THE SENTENCE HE RECEIVED AT HIS FIRST COURT–MARTIAL.

and he so informed appellant.[2] He also explained the potential impact of the pretrial agreement on the sentence that ultimately might be approved. He did not, however, as part of the providence inquiry during the merits phase of the court-martial, explain what impact the sentence approved following appellant's original trial might have on the sentence ultimately approved after the rehearing. It is clear from the record of trial that the military judge was aware of the potential impact of Rule for Courts–Martial 810(d)[3] [hereinafter R.C.M.] because he made reference to the rule during the providence inquiry as he discussed with appellant the maximum sentence that could be adjudged by him at the rehearing.[4]

After announcement of the sentence, however, the military judge did explain the impact of R.C.M. 810(d) to appellant after discussing the pretrial agreement's sentence limitations: "It's also the case, Private Cruse, that the Convening Authority in his initial action is limited by whatever the sentence was in your original trial and the terms of that." He explained to appellant that the pretrial agreement was more favorable than the adjudged sentence at the rehearing and the sentence approved after his original court-martial. Appellant agreed that he understood the meaning and effect of the sentence limitation of the pretrial agreement, and he responded in the negative when the military judge asked if he had any questions on the subject.

Footnote 1 of appellant's R.C.M. 1105 submission to the convening authority, prepared by the trial defense counsel, noted the impact of R.C.M. 810 on the sentence that the convening authority could approve. The statement in footnote 1 is silent about whether appellant knew or understood the impact of R.C.M. 810(d) prior to or during the rehearing, and does not allege that the military judge erred by not discussing the application of R.C.M. 810(d) with appellant during the merits phase of the court-martial. Appellant did not submit a personal clemency statement to the convening authority and thus did not assert any lack of knowledge or understanding of the impact of R.C.M. 810(d) prior to or during the rehearing. The record of trial's allied papers indicate that the trial defense counsel, prior to submitting appellant's clemency matters, requested an extension of time because he was awaiting appellant's "feedback ... concerning [his] draft 1105/1106 submission."

In a sworn affidavit filed with this court, appellant states that his trial defense counsel told him that he might receive as much as ten years of confinement at the rehearing (the exact sentence to confinement adjudged at the rehearing), and recommended the negotiation of a pretrial agreement limiting the confinement to time served. Appellant also states that his trial defense counsel "never mentioned that [he] could not receive more confinement or a more severe discharge than [he] received at [his] first court-martial." Appellant now asserts that he sees no advantage to having pled guilty with a pretrial agreement because he had already served most of his confinement.

## DISCUSSION

Appellant complains on appeal that his pleas of guilty were improvident because he was not informed by his trial defense counsel or by the military judge of the impact of R.C.M. 810(d). He also asserts that his trial defense counsel was ineffective for not informing him, prior to negotiating the pretrial agreement, of R.C.M. 810(d)'s impact.

In his appellate brief, appellant asserts that the government had a great incentive to negotiate a guilty plea because, if appellant had contested the charges, the government

---

**2.** This is the statutory maximum sentence which may be imposed for the crimes to which appellant pled guilty.

**3.** Rule for Courts–Martial 810(d) states that "offenses on which a rehearing ... has been ordered shall not be the basis for an *approved* sentence in excess of or more severe than the sentence ultimately *approved* by the convening authority or higher authority following the previous trial or hearing" (emphasis added). Certain exceptions to this rule exist but are not applicable in this case.

**4.** "MJ: All right. I'm satisfied that RCM 810 as it now exists was applicable in pertinent part at the time of the offenses to which the accused has pled guilty, namely, RCM 810(d)."

would have had to expend considerable effort and expense to locate and produce up to thirteen witnesses. He also asserts that convictions at the rehearing were far from certain because the government did not have an overwhelming case. The implication of these statements is that, had appellant contested the charges at the rehearing, the government might not have pursued the charges or appellant might have been found not guilty. Thus, appellant asserts that he had little incentive to plead guilty, except to avoid substantial confinement that he did not know, and was not informed, could not be approved.

### I. The Providence Inquiry

■ We have found no case that addresses whether a military judge at a rehearing is required to advise the accused of the effect of R.C.M. 810(d) as part of the providence inquiry during the merits phase of the court-martial. However, in any case involving a negotiated plea, whether on rehearing or otherwise, a military judge is required to inform an accused during the merits phase of the maximum punishment which may be imposed based upon his pleas of guilty. *See* R.C.M. 910(c)(1). A guilty plea may be rendered improvident where it is " 'predicated upon a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject.' " *United States v. Harden*, 1 M.J. 258, 259 (C.M.A.1976) (quoting *United States v. Windham*, 15 U.S.C.M.A. 523, 525, 36 C.M.R. 21, 23, 1965 WL 4773 (1965)). In a particular case, "even a substantial difference in the perceived maximum punishment, when compared against the true maximum punishment, may not be material to a given accused." *United States v. Poole*, 24 M.J. 539, 542 (A.C.M.R.1987) (citing *Harden*, 1 M.J. at 260).

■ During the sentencing phase in a court-martial before a military judge alone, the military judge must inquire into the sentence limitation set forth in the pretrial agreement. *See United States v. Green*, 1 M.J. 453, 456 (C.M.A.1976). The purpose of

this requirement is "to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made." *Green*, 1 M.J. at 456 (citing UCMJ art. 45(a), 10 U.S.C. § 845(a)). Implicit in the *Green* inquiry is the requirement that the military judge ensure that an accused's decision to plead guilty is made with full knowledge of its consequences, including the potential impact of a pretrial agreement on the adjudged sentence. *Green* also established the requirements that the military judge not review the sentence limitation in the pretrial agreement prior to announcing the sentence and that the military judge then explain to the accused the interaction of the sentence adjudged and the sentence limitation, just as the military judge did in this case. This final explanation is a continuation of what we term the "providence inquiry." *Green*, 1 M.J. at 456 (citing *United States v. Elmore*, 1 M.J. 262, 264–65 (C.M.A.1976)).

■ In this case, the military judge correctly advised appellant of the maximum sentence that could be *adjudged* at the rehearing.[5] *See* R.C.M. 810(d)(1) ("Sentences at rehearings ... shall be adjudged within the limitations set forth in R.C.M. 1003."). While the military judge did not initially discuss, as part of the providence inquiry during the merits phase, the application of R.C.M. 810(d) on the sentence which could be *approved* after the rehearing, he did discuss the application of the rule during the sentencing phase when he explained to the accused the interaction of the adjudged sentence, the pretrial agreement sentence limitation, and the sentence approved after the earlier trial. Thus, the military judge committed no error.

■ Just as a military judge is required to inform an accused during the merits phase of a guilty plea inquiry of the potential effect of the sentence limitation in a pretrial agreement, we believe the better practice would be

5. Appellant's offenses occurred after the effective date of an amendment to Article 63, UCMJ, 10 U.S.C. § 863. The practical effect of the amendment is that, as to offenses which were committed on or after 23 October 1992, a court-martial, when sitting for a rehearing *on sentence,* is no longer advised that the maximum sentence that may be adjudged is the sentence previously approved after the initial trial by the convening authority; however, the convening authority may not approve a sentence more severe than the one approved at the previous trial or hearing.

to also explain the effect of R.C.M. 810(d) on the sentence that could be approved after the rehearing *during the merits phase of the guilty plea inquiry,* preferably without learning of that prior sentence until after announcing the sentence. *See Green,* 1 M.J. at 456. We conclude, however, that appellant suffered no prejudice because the military judge did explain the impact of R.C.M. 810(d) to appellant during the sentencing phase of the trial and because we are convinced, as further discussed below, that, prior to sentencing, appellant knew of the sentence limitation created by R.C.M. 810(d).

## II. Ineffective Assistance of Counsel

Regarding appellant's claim that his trial defense counsel was ineffective by not advising him of the impact of R.C.M. 810(d), we find after de novo review that appellant has not met his burden of establishing either prong of the *Strickland* test [6] for ineffective assistance of counsel. First, as discussed below, we are satisfied that appellant was aware of the impact of the previously approved sentence before sentencing. Second, we find that appellant suffered no prejudice by defense counsel's performance. Rather, as noted above, appellant was well served by his counsel's actions in obtaining a very favorable pretrial agreement that precluded appellant from returning to confinement.

Under the circumstances of this case, we see no necessity to seek an affidavit from the trial defense counsel concerning his pretrial advice to appellant, or to order a *DuBay* [7] hearing to gather further evidence. "[T]he appellate filings and the record as a whole 'compellingly demonstrate' the improbability

of [appellant's alleged] facts," and we may decide the legal issue without further proceedings. *United States v. Ginn,* 47 M.J. 236, 248 (1997).

## III. Prong I—Trial Defense Counsel's Performance

█ First, it is clear from the record that both counsel and the military judge knew of the provisions of R.C.M. 810(d) during the providence inquiry. The military judge made reference to the rule when consulting counsel about the maximum permissible sentence he could adjudge. The trial defense counsel's knowledge of this rule is further evidenced by footnote 1 of appellant's post-trial submission to the convening authority which trial defense counsel drafted and appellant reviewed prior to its submission.[8]

Second, when the military judge explained the effect of R.C.M. 810(d) to appellant while also discussing the meaning of the quantum portion of the pretrial agreement, appellant did not ask any questions, nor did he indicate any lack of awareness or understanding of the impact of R.C.M. 810(d) on the sentence which could be approved after his rehearing. Appellant's conduct at his rehearing belies his belated allegation of lack of knowledge, particularly because the military judge had told him during the merits phase of the trial that he could later ask to withdraw his pleas of guilty.

Third, if appellant had been unaware of the effect of R.C.M. 810(d) at his court-martial, then he would have discovered the application of R.C.M. 810(d) after reading footnote 1 of the draft of his R.C.M. 1105 submission. Presumably appellant would

---

6.
    First, the [appellant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [appellant] by the Sixth Amendment. Second, the [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable.
    *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

7. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

8. Appellant's brief speculates that this was counsel's attempt to cover up his previous lack of knowledge of the implications of R.C.M. 810(d). It seems odd that, if counsel were attempting to cover up some dereliction in failing to properly advise his client, he would then draw attention to it in this important document, especially since the limitations provided for in the pretrial agreement would control the convening authority's action, not R.C.M. 810(d).

have insisted that his "improvident" guilty pleas be mentioned to the convening authority. Nothing in the post-trial submission mentions appellant's alleged lack of understanding of the application of R.C.M. 810(d).

### IV. Prong II—Prejudice

Assuming, arguendo, that trial defense counsel failed to inform appellant, either prior to or at appellant's rehearing, of the application of R.C.M. 810(d) to his approved sentence upon rehearing, such failure would constitute error under the first prong of *Strickland.* However, considering all the circumstances of this case presented by the record and by appellant's affidavit submitted on appeal, we conclude that appellant was not prejudiced as a result of trial defense counsel's alleged error.

Our review of the original record of trial convinces us that appellant and his trial defense counsel considered the quantum and quality of evidence against appellant prior to his rehearing and determined that: (a) appellant would be found guilty in a contested case; and (b) appellant could not avoid a punitive discharge and some confinement at a rehearing. As a result, the trial defense counsel negotiated a pretrial agreement to limit appellant's confinement to time served with a punitive discharge no greater than a bad-conduct discharge.

We view the quantum of evidence against appellant as overwhelming. Given the seriousness of the offenses with which appellant was charged, the overwhelming evidence against him, and the likelihood that he would have to complete his original term of confinement and would again receive a punitive discharge, we conclude that there was no reasonable likelihood that, had appellant

known prior to his rehearing that his approved sentence at the rehearing was capped at five years, a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to Private E1, appellant would have rejected his plea bargain and demanded a trial.

We are not persuaded by appellant's claim that the government might have been unwilling or unable to re-prosecute the case. Appellant was charged with very serious offenses; it is highly unlikely that the resources that would be expended in a contested case would dissuade the government from again prosecuting the case. Nor is there any reason to believe the government could not prove the case. During an altercation with his girlfriend, appellant shot her in the face with a pistol, permanently damaging her eyesight, and then shot himself in the head. The victim and appellant survived, and the victim gave testimony that was consistent with the considerable amount of physical and forensic evidence. The staff judge advocate's pretrial advice to the convening authority pertaining to the rehearing advised the convening authority of his options, stated that all witnesses had been located and were available to testify, and recommended referral to a court-martial. The convening authority followed this recommendation.

Likewise, appellant's claim that he had nothing to gain by pleading guilty is demonstrably false. At the time of the rehearing, appellant had served 1,017 days of his five-year sentence;[9] five years is approximately 1,825 days; thus over two years remained to be served, before applying good-time credit.[10] The pretrial agreement guaranteed he would not return to confinement. He pled guilty

---

**9.** Although not clear from the record of the rehearing, our calculations indicate that appellant was released from confinement following the prior decision of this court and well before the rehearing.

**10.** We are not unmindful of the ameliorating possibilities of good-time credit (*see United States v. Ruppel,* 49 M.J. 247, 252 (1998)) (citing *North Carolina v. Pearce,* 395 U.S. 711, 719 n. 13 (1969)) and the opportunity for parole. Appellant has not, however, provided any information

concerning the good-time credit he accrued, if any. Assuming that he had not forfeited any of his maximum good-time credit for a five-year sentence (eight days per month times sixty months for a total of 480 days), appellant still had approximately 328 days until his minimum release date, minus any additional days of work credit. *See* Army Reg. 633–30, Apprehension and Confinement, Military Sentences to Confinement, para. 13d (6 Nov. 1964).

and left his rehearing free of confinement and parole. "Given the realities of the situation, we conclude there was no reasonable likelihood that appellant would have rejected his plea bargain and demanded trial at the date and time his trial was called." *United States v. Poole*, 26 M.J. 272, 274 (C.M.A. 1988).

### DECISION

The findings of guilty and the sentence are affirmed.

Senior Judge MERCK and Judge TRANT concur.