UNITED STATES

v.

Sergeant Stephen J. HOUNSLEA, FR 117–44–6577, United States Air Force.

ACM S24540.

Air Force Court of Military Review.

Sentence Adjudged 29 June 1977.

Decided 10 Feb. 1978.

On Reconsideration 7 April 1978.

Appellate Counsel for the Accused: Colonel Robert W. Norris, Colonel B. Ellis Phillips and Captain Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr. and Major Gilbert J. Regan.

Before EARLY, FORAY and HERMAN, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by special court-martial, the accused was convicted, pursuant to his pleas, of transferring phencyclidine and wrongfully possessing phencyclidine with intent to distribute, in violation of 21 United States Code § 841, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for three months and reduction to airman basic.[1]

Appellate defense counsel assign five errors for our consideration. Except as discussed below we find them to be without merit.

In their first assignment, appellate defense counsel assert:

THE COURT–MARTIAL WAS WITHOUT JURISDICTION TO TRY THE ACCUSED FOR THE OFFENSE OF OFF–BASE POSSESSION AND TRANSFER OF PHENCYCLIDINE.

We disagree.

Without belaboring the facts, it is clear that the initial contact was made and that the entire negotiation between the accused and the informant was conducted while both were in uniform, on duty and on base. It was also established that the transfer was made with the understanding that the informant would resell the controlled drug to "his friends", presumably other servicemen and women on the base. We consider the mere fact that the actual transfer was made at the accused's residence off base to be insignificant in light of the above facts. As was held in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 35, 54 C.M.R. 30, 35 (Interim), 2 M.J. 26, 29 (1976):

The entire criminal venture was developed by soldiers who had associated in their military unit and both of whom knew that the next most likely recipient of their contraband would be fellow soldiers on post. Under such circumstances, the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense. (footnote omitted)

See also *United States v. Alef*, 3 M.J. 414 (C.M.A.1977); *United States v. Sandy*, 4 M.J. 102 (C.M.A.1977).

In their second and third assignments, appellate defense counsel challenge the voluntariness and providency of the accused's guilty plea because of the existence of an alleged pretrial agreement. We agree.

At the trial, the accused pleaded guilty, and, after a searching providency inquiry[2] during which the accused stated that he had not entered into any pretrial agreement with the convening authority, the plea was accepted. Subsequently, during the pretrial session, the trial counsel announced his intention to introduce evidence in aggravation which related to a specification dismissed by the convening authority. During the heated discussion that followed, the individual defense counsel stated, seriatim:

. . . They have dismissed the Charge and yet, when it comes to sentencing, they're saying, all right, we will dismiss the Charge in exchange for a plea of guilty, but we are going to bring it up anyway, and it's going to be accepted as fact by the tribunal.

Technically, I believe they have that right. Morally, I have questions on it.

\* \* \* \* \* \*

---

1. In taking his action, the convening authority suspended the unserved portion of confinement remaining on 22 August 1977.

2. See *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

I realize that, Your Honor, and I was just making point (sic) as to what we were led to believe in the plea agreement. Whether it was done intentionally or unintentionally, that is what we were lead to believe. I would just wish to state that, not to going to the point of whether, in fact, it is or is not admissible.

To me, that was a part of the bargain. Appointed defense counsel also took part in the interchange, stating:

. . . Had I been advised that the Government intended to do that, I might have reconsidered my plea.

    \*     \*     \*     \*     \*     \*

. . . Again, had I been told; had I realized that I had been told that this testimony would be elicited, and like I indicated before, it certainly would have reflected upon my decision on which way to plead.

Trial counsel in supporting his position that the evidence was admissible in aggravation, advised the military judge:

[Defense counsel], by innuendo, has accused the prosecution of unethical conduct and of it not dealing with the defense fairly and with hands above board. He had also intimated that the withdrawal of the charges was part of a bargain. I want to assure the court that such conduct has not taken place . . . .

At this point the defense requested a ten minute recess. After some 45 minutes elapsed, the individual defense counsel told the military judge:

If I might, Your Honor, I would like to advise the court that I was in error that a plea agreement had been reached or a bargain had been made.

And, I would apologize to the Court and to trial counsel for my remarks.

The military judge asked if the defense wished to change its pleas and was informed that it did not. He then ruled on the admissibility of the proffered evidence and the trial proceeded without further event.

In support of its brief appellate defense counsel submitted an affidavit from the appointed defense counsel which related that prior to trial he discussed with the chief of military justice the possibility of "dismissal of several specifications in return for a guilty plea to the remaining Charges." He states that "pursuant to the above-stated agreement, the appropriate specifications were dismissed by the convening authority" and the accused pleaded guilty to the remaining Specifications. He then deposed that when the offer to introduce the aggravating matter was made by the trial counsel,

this action, in my mind and in the mind of my co-counsel . . . went contra to our earlier agreement with the government. At this point [individual defense counsel] mentioned to the judge in open court the existence of the aforementioned agreement. At that point, I asked for a recess and . . . indicated to him that he may forfeit the agreement if his statement was allowed to stay uncontroverted on the record. . . . During this rediscussion, it was agreed that the testimony in aggravation which was originally planned by the government would not be brought up. Once back in court [individual defense counsel] disclaimed any knowledge of an agreement and nothing further in aggravation concerning the dismissed specifications was brought upon by the government.

In opposition, appellate government counsel submitted affidavits from the base staff judge advocate, the chief of military justice and the trial and assistant trial counsels, all of whom assert that there was no pretrial agreement to dismiss specifications in return for guilty pleas and that the specifications were dismissed because of jurisdictional and evidentiary difficulties. Those present at the recess "rediscussion" state that the accused and his counsel were told that there was no agreement and that if the defense believed that there had been one, they should withdraw the guilty pleas. The assistant trial counsel also correctly noted that the evidence in aggravation was reoffered, and, except for that to which the judge sustained objections, was introduced at trial.

[2]  Whatever the facts herein may be, it is quite clear that there was considerable disagreement between the trial participants as to whether or not there was some sort of pretrial agreement, affecting the accused's plea of guilty. While we may sympathize with the military judge faced with such direct contradictions in testimony,[3] we hold he erred in not inquiring further into the existence, or nonexistence, of any such agreement when the possibility of it was brought to his attention. As was held in *United States v. Green*, 24 U.S.C.M.A. 299, 302, 52 C.M.R. 10, 13 (1976): 1 M.J. 453, 456 (1976):

> We are not unmindful of the additional burden such an inquiry would place on the trial judiciary. Nevertheless, the propriety and meaning of various plea bargain provisions remains a fertile source of appellate litigation.  .  .  .
> Judicial scrutiny of plea agreements at the trial level not only will enhance public confidence in the plea bargaining process, but also will provide invaluable assistance to appellate tribunals by exposing any secret understandings between the parties and by clarifying on the record any ambiguities which lurk within the agreements. More importantly, a plea bargain inquiry is essential to satisfy the statutory mandate that a guilty plea not be accepted unless the trial judge first determines that it has been voluntarily and providently made.

We believe that this logic, which relates to the situation where there is a plea bargain agreement, applies equally here where the question is whether a plea bargain exists. The proper place to make such a determination is at the trial level when all parties are present and participating, not at the appellate level on the basis of conflicting affidavits. While we do have the fact finding power denied to most other appellate courts, we are ill-equipped to decide at this level the subjective issue of the beliefs and understanding of counsel. This must

be resolved at trial. *United States v. Elmore*, 1 M.J. 262 (C.M.A.1976); *United States v. Green, supra*; *United States v. King*, 3 M.J. 458 (C.M.A.1977); *United States v. Reed*, 4 M.J. 718 (N.C.M.R.1977); *United States v. Easley*, 4 M.J. 768 (A.C.M.R.1977), dissenting opinion.

Since we are unable to determine whether any such pretrial agreement was made, and, if so, the conditions of it, we cannot find the pleas of guilty by the accused to be provident. A rehearing is required.

The findings of guilty and the sentence are set aside. A rehearing is ordered.

FORAY and HERMAN, Judges, concur.

## DECISION UPON RECONSIDERATION

In our initial decision, *United States v. Hounslea*, 5 M.J. 546 (A.F.C.M.R. 10 Feb. 1978), we set aside the findings of guilty and the sentence and ordered a rehearing on the ground that we could not determine the providency of the accused's plea of guilty in view of the contradictions in the record of trial and the post-trial affidavits submitted by opposing counsel and others. The government timely filed a motion for reconsideration attacking both the basis for our decision and the remedy we ordered. On 3 March 1978 we granted the motion for reconsideration and certain other allied motions.

■ As to the first prong of appellate government's assertions, we affirm our original decision. This court has long held that where there are inconsistencies or ambiguities in the accused's providency responses which are explained in post-trial statements, and where such inconsistencies or ambiguities, as explained, affect the providency of the accused's pleas, we would grant relief by ordering a new trial. See *United States v. Gill*, 50 C.M.R. 206 (A.F.C.M.R.1975). This does not mean, as appellate government counsel assert, that an unsupported post-trial statement of the accused attacking the providency of his pleas,

**3.** At one time or another, all of the trial participants except the appointed defense counsel denied the existence of any agreement.

in the absence of such ambiguities in the record of trial, would entitle him to similar relief. See, however, *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).[1]

In the latter event we would look to the adequacy of the providency inquiry to determine the providency of the accused's pleas. See *United States v. Care*, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969). We do not believe that a post-trial statement, without more, can overcome a *proper* providency inquiry. See *United States v. Lanzer*, 3 M.J. 60 (C.M.A.1977).

In the instant case, the providency inquiry was properly accomplished, and the accused denied any agreement with the convening authority. However, statements of both defense counsel during the trial indicate their perception of some form of pretrial agreement. Further, post-trial affidavits of the appointed defense counsel and the accused specifically allude to such a pretrial agreement. Other affidavits submitted by the government denied the existence of any such agreement. Initially, we held that, in the peculiar circumstances of this case, the judge should have resolved the ambiguities presented at trial, or he should have rejected the accused's plea and put the government to proof. We simply declined to resolve the issue of whether or not there was a pretrial agreement on the basis of the misleading trial dialogue and the conflicting post-trial affidavits of counsel. As was held in *Blackledge v. Allison, supra;*

> Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

.  .  .  .  .

> [But] in administering the writ of habeas corpus  .  .  ., the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

.  .  .  .  .

> The critical question is whether these allegations when viewed against the record of the plea hearing, were so 'palpably incredible',  .  .  .  so 'patently frivolous or false'  .  .  ., as to warrant summary dismissal.

431 U.S. at 74–6, 97 S.Ct. at 1629.

This is the test we sought to apply.

■ Turning now to the second thrust of appellate government counsels' argument, we note that, since we were "unable to determine whether any such pretrial agreement was made, and, if so, the conditions of it," we could not conclude that the pleas of the accused were provident, and, hence, we ordered a rehearing. Appellate government counsel now argue that these factual questions could properly be resolved by a limited hearing as provided in *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). In support of this contention, we are referred to the cases of *Smith v. Helgemoe*, 48 C.M.R. 509 (N.C.M. R.1974) and *United States v. Braye*, 47 C.M.R. 949 (A.C.M.R.1973). In *Helgemoe*, the accused contended, on appeal, that the pretrial agreement provided for confinement and forfeitures for a period of four months rather than for the two months set forth in the agreement which he signed. The Navy Court of Military Review re-

---

1. In this case, relied upon by appellate government counsel, the petitioner pleaded guilty to one out of three charges. The entire providency inquiry consisted of a printed form which was completed by the trial judge on the basis of answers to questions from petitioner. No other record of the proceeding was made. The petitioner was sentenced to 17 to 21 years

confinement. After exhausting his state court remedies, he petitioned for habeas corpus relief on the ground that his attorney informed him that the state solicitor and the judge had agreed to limit his confinement to 10 years (the statutory minimum). The United States Supreme Court held that he was entitled to an evidentiary hearing on his allegations.

turned the case for a limited hearing to hear the contentions of the parties on the question of the term of the forfeitures and confinement. In *Braye*, the issue of the accused's sanity as it may have affected the providency of the accused's plea was raised after trial. The Army Court of Military Review returned the case for a limited hearing as to whether the accused's plea was improvident because of lack of mental responsibility at the time of the offense.

Upon reconsideration, we agree with appellate government counsel that a limited hearing to determine the existence, or lack of same, of a pretrial agreement is a proper manner to resolve this factual issue. Within the confines of this forum the conflicting assertions of the parties can be resolved and presented in a proper manner to us to resolve the ultimate issue of the providency of the accused's pleas of guilty.[2]

The record of trial is returned to The Judge Advocate General for referral to the convening authority for a limited hearing on the following issues:

1. Was there a pretrial agreement?
2. If so, what were its terms? [3]
3. Was the agreement complied with satisfactorily by the government in return for the accused's pleas of guilty?

The hearing may be held before the same or a different military judge who will hear the presentation of evidence, testimony of witnesses and enter findings of fact based thereon. The record of such proceedings will be forwarded to this Court for our review as part of the record of trial.

FORAY and HERMAN, Judges, concur.

---

2. We do not here decide whether the issue of providency could properly be resolved by a post-trial limited hearing, particularly where, as here, there is an apparently valid *Care* inquiry, believing that this question must be resolved affirmatively by this Court before any final action could be taken; that is, we must be satisfied that the accused's plea was provident or reversal is mandated. To this extent we do not follow *Braye, supra*. We do not feel that a limited rehearing could properly be used for a new *Care* inquiry. Cf. *United States v. Gregg*, 4 M.J. 897 (N.C.M.R. 16 March 1977). We believe that our holding is in consonance with the orders in *United States v. Boyd*, 4 M.J. 237 (C.M.A.1978), *United States v. Frederick*, 4 M.J. 237 (C.M.A.1978) and the decision in *United States v. Green*, 1 M.J. 453 (C.M.A.1976).

3. See *United States v. Green, supra*, and *United States v. King*, 3 M.J. 458 (C.M.A.1977).