**UNITED STATES**

v.

**George E. WILLIAMS, Jr., 357–58–7131, Radioman Second Class (E–5), U.S. Navy.**

**NMCM 97 00848.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 26 Feb. 1997.

Decided 31 Dec. 1998.

---

LT Robert Attanasio, JAGC, USNR, Appellate Defense Counsel.

Capt Paul D. Kovac, USMC, Appellate Government Counsel.

Before OLIVER, Chief Judge, CLARK and LEO, Senior Judges.

CLARK, Senior Judge:

At his general court-martial, the appellant pleaded guilty to making and uttering 29 checks with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1994)[hereinafter UCMJ]. The monetary value of these checks exceeded $20,000. He also pleaded guilty to obtaining services under false pretenses of a value in excess of twelve hundred dollars, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced the appellant to confinement for 10 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge.

The appellant has filed five assignments of error,[1] of which most relate to the appellant's pretrial agreement. We have considered the assignments of error, the Government's response, and oral argument on assignments of

---

1. I. A SENTENCE INCLUDING AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THIS CASE WHERE APPELLANT HAD [SIC]: (1) HAD SERVED FOR 10 YEARS IN THE U.S. NAVY; (2) HAD AN EXCELLENT CHARACTER OF SERVICE WITH AN AVERAGE MARK OF 3.8; (3) WAS ENTITLED TO NUMEROUS AWARDS AND DECORATIONS INCLUDING TWO GOOD CONDUCT MEDALS, A MERITORIOUS UNIT COMMENDATION, AND THE SEA SERVICE RIBBON; AND, (4) HAD NO PRIOR CONVICTIONS OR NON–JUDICIAL PUNISHMENTS. *See* Staff Judge Advocate's Recommendation.

II. APPELLANT WAS DEPRIVED OF THE BENEFIT OF HIS PRE–TRIAL AGREEMENT BECAUSE FORFEITURES WERE COLLECTED DESPITE THE FACT THAT THE CONVENING AUTHORITY, PURSUANT TO THE PRE–TRIAL AGREEMENT, SUSPENDED ADJUDGED FORFEITURES AND WAIVED IMPOSITION OF FORFEITURES UNDER ARTICLE 58B, UCMJ.

III. APPELLANT'S PLEAS TO ALL CHARGES AND SPECIFICATIONS WERE IMPROVIDENT BECAUSE APPELLANT WAS ERRONEOUSLY INDUCED INTO PLEADING GUILTY BY AN HONEST AND SUBSTANTIAL MISUNDERSTANDING AS TO A MATERIAL TERM IN THE PRETRIAL AGREEMENT, PARAGRAPH 3 OF THE MAXIMUM SENTENCE APPENDIX.

IV. APPELLANT'S PLEAS TO ALL CHARGES AND SPECIFICATIONS WERE IMPROVIDENT BECAUSE A MATERIAL PROVISION IN THE PRETRIAL AGREEMENT, THE FINE/FORFEITURE SENTENCE LIMITATION, WAS NEGOTIATED AND AGREED UPON BY THE GOVERNMENT AND APPELLANT BASED UPON A "MUTUAL MISTAKE."

V. THE MILITARY JUDGE ERRED BY FAILING TO CONDUCT AN ADEQUATE INQUIRY TO DETERMINE IF APPELLANT UNDERSTOOD THE MEANING AND EFFECT OF PARAGRAPH 3 OF THE THE [SIC] SENTENCE LIMITATION APPENDIX TO THE PRETRIAL AGREEMENT.

VI. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL DEFENSE COUNSEL FAILED TO ASCERTAIN AND ADVISE APPELLANT ABOUT THE PRACTICAL CONSEQUENCES OF A MATERIAL TERM OF THE PRETRIAL AGREEMENT, PARAGRAPH 3 OF THE MAXIMUM SENTENCE APPENDIX. (Citations omitted.)

error II and III. We conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to a substantial right of the appellant was committed.

We find that the appellant's pleas to the charges and specifications were not rendered improvident by his misunderstanding about the effect a collateral consequence of his status would have upon a provision in his pretrial agreement; that the military judge's inquiry into the pertinent provision of the pretrial agreement was adequate; and that the defense counsel's advice to the appellant was not prejudicially deficient.

The operative provision of the appellant's pretrial agreement consists of the following language:

> **3. Forfeiture or Fine:** All fines and/or forfeitures will be suspended for a period of twelve (12) months from the date that the sentence is adjudged, at which time, unless sooner vacated, the suspended fines and/or forfeitures will be remitted without further action. This agreement also constitutes a request by the accused for, and approval by the convening authority of, a six (6) month waiver of automatic forfeitures which may be imposed pursuant to Art. 58b of the UCMJ.

Appellate Exhibit III. The military judge misadvised the appellant that the convening authority was obligated to suspend forfeitures of pay for 10 months from the date of sentencing. Record at 71. The military judge then advised the appellant that the convening authority had agreed to waive for 6 months the automatic forfeitures required by Article 58b, 10 U.S.C. § 858b, "the benefit of that waiver being to your dependents." *Id.* The appellant and both counsel indicated their agreement with the military judge's understanding of the effects of the pretrial agreement. *Id.*

At the time of the appellant's court-martial, he was on legal hold since the expiration of his active obligated service 2 weeks earlier. Record at 15. Neither the appellant nor his defense counsel was aware of the Department of Defense Regulation which provides that servicemembers on legal hold who are later convicted of an offense under the UCMJ forfeit the right to accrue pay or allowances after the conviction. *See* Defense counsel's affidavit dated 4 March 1998. Leave-and-Earning Statements attached to the record of trial via motion indicate that no pay or allowances were disbursed to the appellant after the convening authority took action on the sentence.

Nearly 11 months after his general court-martial the appellant filed with this court an affidavit in which he made the following averments:

> 1. I entered into a pre-trial agreement with the convening authority in my general court-martial (Case no. 9700848).
>
> 2. The only reason I entered into the pretrial agreement was because, in exchange for my pleas of guilty, the convening authority agreed to: 1) suspend all adjudged forfeitures and fines for a period of 12 months, and 2) to waive all automatic forfeitures under article 58b, UCMJ for a period of six months.
>
> 3. At the time I entered into the pre-trial agreement, I fully expected that my dependent would receive my full pay and allowances for six months after the date of the court-martial.

Post-trial affidavit of George E. Williams, Jr., dated 11 January 1998. In a post-trial affidavit dated 4 March 1998, the appellant's trial defense counsel indicated that the pretrial agreement provision for suspending adjudged and automatic forfeitures was because the appellant "was concerned that his family would otherwise be without any source of income." In another post-trial affidavit, dated 17 April 1998, the trial defense counsel indicated that the main concern of the appellant and his family was the confinement which they wanted to limit. The defense counsel stated his belief that the appellant's assertions "that forfeitures were all that he was concerned with is patently false and misleading."

Under the military justice system, pretrial agreements are negotiated between the accused and the convening authority. *United States v. Caruth,* 6 M.J. 184, 186 (C.M.A.1979). The provisions and the sentence limitations are determined by the par-

ties to the agreement. *See United States v. Rice*, 25 M.J. 35, 39 (C.M.A.1987); RULE FOR COURTS–MARTIAL 705(b), MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. "Pretrial agreements will be strictly enforced based upon the express wording of the agreement." *United States v. Rascoe*, 31 M.J. 544, 553 (N.M.C.M.R.) (*citing United States v. Lanzer*, 3 M.J. 60, 62 (C.M.A.1977)). Where an ambiguity exists, it will be resolved in favor of the accused. *Rascoe*, 31 M.J. at 553.

 In inquiring into the providence of a guilty plea, the military judge must ascertain whether an accused understands the provisions as well as the sentence limitations of a pretrial agreement. *United States v. Green*, 1 M.J. 453, 456 (C.M.A.1976). Appellate courts will view a failure to inquire into the pretrial agreement as a matter affecting the providence of the guilty plea. *Id.*

In the appellant's case, the military judge made a thorough inquiry into the express provisions and the sentence limitations of the pretrial agreement. The military judge elicited from the appellant an agreement that the appellant understood all the provisions and the sentence limitations of the pretrial agreement. Even before this court the appellant does not claim to misunderstand the wording of the pretrial agreement. The express wording of the pretrial agreement does not contain any misleading ambiguity. The appellant's claim is based upon his assertion that he misunderstood the collateral consequences of his military status as a serviceperson on legal hold following expiration of his active obligated service. Thus, the appellant suggests by implication that his guilty pleas were not voluntary. We disagree.

 The standard for voluntariness of a guilty plea requires that an accused be fully aware of the direct consequences, including the actual value of any commitment made to him by the Government. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The standard for the voluntariness of a pretrial agreement implies that an accused must be free to accept or reject any offer made by the Government. *United States v. Burnell*, 40 M.J. 175, 176 (C.M.A.1994)(*citing Bordenkircher v.*

*Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). The standard for intelligently entering into a pretrial agreement does not mean that the accused must correctly assess every relevant factor entering into his decision. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A pretrial agreement generally will stand unless it is induced by threats, improper harassment, misrepresentation, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Burnell*, 40 M.J. at 176 (*quoting Brady*, 397 U.S. at 755, 90 S.Ct. 1463).

R.C.M. 705 states with specificity the permissible promises by the parties to a pretrial agreement. Implicit in the list of permissible promises is the requirement that the execution of the promise be within the power or authority of the party making the promise. The convening authority may promise to take specified action on the sentence adjudged by the court-martial. R.C.M. 705(b)(2)(E). This provision implies that any such actions taken on the sentence will be within the power or authority of the convening authority.

In the appellant's case, a collateral consequence of his legal hold status was that he would not be entitled to any pay or allowances for the adjudged forfeitures to affect. We accept as fact the post-trial representations that neither party was aware that the appellant would not be entitled to any pay or allowances following his conviction. The record indicates that the military judge and the trial defense counsel were likewise unaware of the regulation affecting the appellant's entitlement to pay after conviction.

In the operative provision of the appellant's pretrial agreement, the convening authority promised to suspend for 12 months all forfeitures and fines adjudged. The convening authority also approved the appellant's request for a 6–month waiver of automatic forfeitures which **may** be imposed pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b. Implicit in the convening authority's promise and in the approval of the appellant's request for the 6–month waiver was

that the convening authority would fulfill the promise and approve the waiver only to the extent that he was authorized or empowered to effect them. As the appellant has conceded, the convening authority made a good-faith effort to comply with the terms of the pretrial agreement.

■ We apply to the convening authority the same standard that applies to a court-martial in its consideration of collateral consequences. Traditionally "courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the *collateral* administrative effects of the penalty under consideration." *United States v. Henderson,* 29 M.J. 221, 222 (C.M.A.1989). We perceive no reason to hold a convening authority accountable for collateral administrative consequences of an accused's conviction and sentence.

■ We find in this case that the convening authority did not have a duty to determine the collateral consequences of the appellant's legal hold status and ensure that the appellant would be entitled to pay and allowances subject to forfeitures which the convening authority purported to suspend or waive. Since the convening authority and the trial counsel were not aware of the regulation affecting the appellant's entitlement to pay and allowances, we find that the Government did not actively induce the appellant to enter into a potentially ineffective pretrial agreement through misrepresentation. · *See Burnell,* 40 M.J. at 176.

We look to the providence inquiry and the evidence in the record to determine whether the appellant was unfairly induced to enter the pretrial agreement solely because of his misunderstanding as to the effect his legal-hold status would have on his entitlement to pay and allowances. We note that a prominent provision of the appellant's pretrial agreement is paragraph 2, in which the convening authority agreed to suspend for 12 months any confinement in excess of 12 months. Although the appellant's sentence was less than 12 months of confinement, that doesn't diminish the value of the protection the pretrial agreement provided the appellant. Also, although it would not be

reasonable to expect the appellant to know beforehand to what confinement he would be sentenced, the fact that he was not sentenced to more than 12 months confinement does not render this provision of the pretrial agreement "a vacuous and hollow shell." In his unsworn statement the appellant does not address his family's need for money, but he does address confinement. Record at 63–66. The appellant's wife testified about the effects of their reduced finances due to the appellant's salary being garnished to pay for the checks he had bounced. As a result of the reduced income, the wife was not able to get her hair done daily, have her nails done, send the girls to the carnival, or buy them new clothes. There was sufficient money, however, for rent and food. Record at 61. Her primary concern seemed to be that the appellant not be separated from the family. *Id.*

Since the appellant has challenged his defense counsel's representation of him, we have considered the defense counsel's posttrial affidavit describing their privileged communications regarding pretrial agreement negotiations. The defense counsel's affidavit, the express wording of the pretrial agreement, the providence inquiry, and the evidence of record lead us to conclude that the appellant was not induced to enter into the pretrial agreement solely to protect his pay and allowances.

Furthermore, the mutual mistake to which the appellant refers was not concerning the direct consequences of the pretrial agreement or a substantial term of the pretrial agreement. The wording of the pretrial agreement is quite clear and unambiguous. Both parties understood that, to the extent that it was within his power to do so, the convening authority would comply with the express wording of the pretrial agreement. To the extent that the adjudged sentence required him to do so, the convening authority attempted to comply with the pretrial agreement. With the appellant having plead guilty as his part of the agreement, both parties seem to have complied with the · agreement in accordance with its express wording.

■ Although we find that the appellant was not unfairly induced to enter into the pretrial agreement solely to protect his pay and allowances, we must determine whether his lack of awareness about his actual entitlement to pay and allowances were the result of ineffective assistance of counsel. An appellant, in claiming ineffective representation by counsel, must establish **both** serious deficiency in the counsel's performance **and** prejudice arising from that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Briggs*, 42 M.J. 367, 371 (1995); *United States v. Lawson*, 40 M.J. 475 (C.M.A.1994); *United States v. Sanders*, 37 M.J. 116 (C.M.A.1993), *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). To satisfy the first requirement, the allegation of ineffectiveness and the record of trial must contain evidence which, if unrebutted, would overcome the presumption of competence. *United States v. Lewis*, 42 M.J. 1 (1995). The second prong requires a showing that, but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

The appellant has cited no authority that supports his proposition that his trial defense counsel's performance was so deficient as to fall below the standard of competency expected of normal, fallible counsel. We recognize that the Department of Defense Regulation which prohibited the appellant from receiving pay and allowances following his conviction was a general regulation. As such, all servicepersons—accuseds and their counsel alike—are presumed to know about it and its provisions. *See Sena v. United States*, 6 M.J. 775, 778 (A.C.M.R.1978). *See also* Manual for Courts-Martial, United States (1995 ed.), Part IV, ¶ 16c(1)(d). Nevertheless, in the appellant's case, none of the persons involved in his court-martial were aware of the regulation or its provision. Despite the legal presumption that everyone knows the law, we find that in this case no one involved in the court-martial even suspected that this provision existed.

■ A defense counsel's obligation to know about a general regulation is no more compelling than that of the accused's. However, a defense counsel is required to fully advise the accused of the ramifications and practical effects of his plea. *See Sena*, 6 M.J. at 778 n. 5. In this case, the general regulation's impact was not directly upon the appellant's pleas, or even upon the sentence, but collaterally upon a consequence of the appellant's status at the time of his court-martial.

■ Both our supervisory court and the standards of the legal profession place upon the defense counsel a heavy burden of determining and advising an accused of the applicable law. This burden, however, does not create a presumption of a situational omniscience on the part of a defense counsel. As did our Army brothers 20 years ago in *Sena*, we decline to find that the defense counsel's failure to advise the appellant that he would not be entitled to pay or allowances following his conviction constituted a deficiency that fell below the standard of competency expected of a normal, fallible attorney.

■ We do not find a sentence which includes a bad-conduct discharge to be inappropriately severe in the appellant's case.

Accordingly, we affirm the findings and the sentence as approved on review below.

Chief Judge OLIVER and Senior Judge LEO concur.